# In the
# United States Court of Appeals
## For the Seventh Circuit

―――――――

No. 02-2528

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

DESMOND CHRISTIAN,

*Defendant-Appellant.*

―――――――

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 00 CR 87—**Sarah Evans Barker,** *Judge.*

―――――――

ARGUED FEBRUARY 21, 2003—DECIDED AUGUST 19, 2003

―――――――

Before CUDAHY, MANION and ROVNER, *Circuit Judges.*

ROVNER, *Circuit Judge.* Desmond Christian was a police officer who attacked a suspect after the man hurled a hateful racial epithet at him. Two of Christian's fellow officers held the suspect while Christian punched him and kneed him in the face. The other officers eventually pled guilty to misdemeanor charges of deprivation of rights under color of law in violation of 18 U.S.C. § 242. Christian was charged with a felony under that same section and was subsequently convicted by a jury and sentenced to 33 months' incarceration and 2 years of supervised release. Christian challenges several evidentiary rulings and the sufficiency of the evidence. He also urges us to find that the government should have been estopped from charging him with a felony when it charged his co-defendants with misdemeanors under the same facts. We affirm.

## I.

What began as a bar fight ended in criminal charges against both the unruly bar patron and some of the police officers who responded to the call. Desmond Christian worked the night shift for the Kokomo, Indiana police department with fellow officers Jason Hahn and Craig Smith. Shortly after midnight on October 20, 1998, the officers were called to the scene of a fight at the Kokonuts Bar. By the time the officers arrived, other bar patrons had already removed an intoxicated customer named Kenneth Kail from the bar to the parking lot. Kail was argumentative and uncooperative, and eventually Officers Smith and Hahn tackled him and placed him in handcuffs. In order to fully subdue him, Officer Smith sprayed Kail with mace. As another officer drove Kail to the Howard County Jail, Kail began banging his head against the Plexiglas divider that separated the front seat from the back seat in the police cruiser. Officer Smith again sprayed Kail with mace in an effort to subdue him. Once they arrived at the jail, the officers handed Kail over to jail personnel who took him to the showers to wash off the mace.

When Kail finished his shower, jail personnel brought him back to the processing area. Christian was in the processing area filling out paperwork. Hahn and Smith were also present, along with several correctional officers. At some point, Christian and Kail began to exchange words. The taunting escalated until Kail called Christian (who is African-American) a "nigger" as two correctional officers escorted Kail past Christian to a chair. As the two jail officers stood watch next to their prisoner, Kail continued his verbal barrage but remained seated in the chair. Christian, Hahn and Smith pushed the jailers aside and Hahn sprayed mace at Kail. Then, as Hahn and Smith pinned Kail to the chair, Christian forcefully kneed and punched Kail in the face several times. Christian then asked Kail, "Now you think I'm still a nigger now?" Tr. at 266. *See also*

Tr. at 410 (testimony that Christian asked Kail, "Am I still a nigger?").

After the beating, a correctional officer escorted Kail to a holding cell. Kail requested medical attention and an ambulance technician examined him. Christian was present in Kail's cell during the examination. Kail told Christian to leave his cell and Christian refused, commenting that he was free to go anywhere in the jail he wanted. Later that morning, a correctional officer photographed Kail's bruised and swollen face, including a cut on his lip.

Christian, Hahn and Smith failed to mention this assault in their official police reports and denied the incident when interviewed by the internal affairs unit of the police department. Hahn and Smith also lied to a grand jury investigating the incident, and Christian threatened another officer about what would happen if Christian were indicted. Christian was charged with felonious deprivation of civil rights under color of law in violation of 18 U.S.C. § 242. Hahn and Smith were charged with misdemeanor violations of section 242. Both pled guilty to these misdemeanor charges and agreed to cooperate with the government in the prosecution of Christian. Christian exercised his right to a jury trial and was convicted after a three-day trial. The district court sentenced Christian to 33 months' imprisonment and two years of supervised release. He appeals.

## II.

On appeal, Christian argues that because the government entered into plea agreements with Smith and Hahn for misdemeanor violations of section 242, the government should have been estopped from presenting evidence of bodily injury at his trial. In the alternative, Christian maintains that those plea agreements constitute an admission by the government that Kail suffered no bodily injury. Christian

also challenges the district court's exclusion of certain expert testimony concerning the extent of Kail's injuries. Finally, Christian contends there was insufficient evidence presented to the jury to find that he acted under color of law.

## A.

Christian, Hahn and Smith were all convicted of violating 18 U.S.C. § 242, deprivation of rights under color of law. A violation of section 242 may be charged as a misdemeanor or a felony, depending on whether bodily injury results from the acts committed in violation of section 242. Christian argues that the government's plea agreements with Smith and Hahn for misdemeanor charges should estop the government from claiming that Kail suffered any bodily injury. After all, Christian argues, the charges against all three defendants arose from the same incident and Kail either suffered bodily injury or did not. If the government agreed to charge his co-defendants with misdemeanors, then the government must be conceding that Kail suffered no bodily injury. Therefore, Christian maintains, the government must be judicially estopped from claiming bodily injury in his case.

The doctrine of judicial estoppel is intended to protect the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). It is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground. *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999), *cert. denied*, 529 U.S. 1082 (2000). Judicial estoppel may apply when (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or

impose an unfair detriment on the opposing party if not estopped. *Maine*, 532 U.S. at 750; *Hook*, 195 F.3d at 306. Christian argues, and the government does not seem to disagree, that the second and third elements are easily met. The prosecutions of Smith and Hahn arose out of the same core set of facts that led to Christian's indictment, establishing the second part of the test. The court accepted the guilty pleas of Smith and Hahn to misdemeanor charges under 18 U.S.C. § 242, and so the third element is met as well. The parties do not address the fourth element but focus their discussion instead on whether the government's position in Christian's case was "clearly inconsistent" with the position it took in the Smith and Hahn cases.

We turn first to the plea agreements themselves. In both Smith's and Hahn's plea agreements, Christian's co-defendants acknowledged that, as a result of the jail house attack, "Kail suffered a bloody lip and pain from the blows." R. 70, Ex. D at 10; R. 70, Ex. E at 9. Thus, both plea agreements acknowledged that Kail suffered bodily injury during the jailhouse altercation. There is therefore nothing factually inconsistent between the plea agreements entered into by Smith and Hahn and the government's charge of a felony against Christian. Christian maintains, however, that the very fact that the government charged Smith and Hahn with misdemeanors indicates that Kail suffered no bodily injury.

Christian's argument seriously misconstrues the purpose and operation of plea agreements. The plea agreements in this case are typical of bargains the government strikes with defendants every day. In exchange for a plea of guilty to the charged offense (or, as occurred here, a lesser offense) and a promise to cooperate with the government in the prosecution of a co-defendant, the government often agrees to dismiss or refrain from bringing additional charges. *See* Fed. R. Crim. P. 11(c). When a court accepts a plea of guilty, it must determine that there is a factual basis for

the plea. Fed. R. Crim. P. 11(b)(3). We take this to mean that the court must find that the facts support the charge; the facts may prove more than what is charged but not less. *See, e.g., United States v. Martin*, 287 F.3d 609, 621 (7th Cir. 2002), *cert. denied*, 123 S. Ct. 116 (2002) (noting the court may accept a plea agreement that includes dismissal of any charges so long as the court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines). Under the facts recited in Smith's and Hahn's plea agreements, the government could have charged the defendants with either misdemeanor or felony charges of deprivation of rights. Because Smith and Hahn saved the government the expense of a trial and because they cooperated in the prosecution of Christian, the government agreed to charge them with a lesser offense, one of the many possibilities contemplated by Rule 11(c). The court accepted those agreements presumably after determining that the charges adequately reflected the seriousness of their offense conduct. To accept Christian's position would obliterate the usefulness of plea agreements. The government would lose its ability to bargain in cases involving more than one defendant because it would be forced to charge each defendant identically. If it offered to charge a lesser offense to a cooperating defendant, or to drop certain counts of an indictment, under Christian's logic the government would be estopped from charging non-cooperating defendants with the full extent of their conduct. *See Rodriguez v. Peters*, 63 F.3d 546, 563 (7th Cir. 1995) (prosecutors are frequently forced to offer a plea bargain in order to obtain testimony that will aid the prosecution of the more culpable members of a conspiracy, and an offer of a plea bargain to a lesser charge can be a proper exercise of prosecutorial discretion). The government would be left with nothing of value to offer cooperating defendants. *See also Standefer v. United States*, 447 U.S.

10, 22-25 (1980) (listing the many reasons the application of nonmutual collateral estoppel against the government in criminal cases is disfavored). Because there is no factual inconsistency between the plea agreements and the charges against Christian, and for the other reasons stated above, we reject Christian's claim of estoppel. *See Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992), *cert. denied*, 506 U.S. 989 (1992) (government's position not inconsistent when government agreed not to seek fraud penalties in prior case while claiming fraud in current case because declining to seek penalty is not an admission that no fraud occurred). Christian's alternative argument, that the plea agreements constitute an admission by the government that Kail suffered no bodily injury, must be rejected for the very same reasons. *See United States v. Delgado*, 903 F.2d 1495, 1499 (11th Cir. 1990), *cert. denied*, 498 U.S. 1028 (1991) (plea agreements do not operate as admissions by the government that a particular crime was not committed because the government often agrees to accept a plea to a lesser charge for many reasons, including to obtain the cooperation of a defendant in the prosecution of co-defendants).

## B.

We turn next to the district court's exclusion of certain expert testimony. Dr. John Pless served as an expert witness for the defense. The prosecution sought to exclude Pless's testimony and the district court held a hearing to consider the prosecution's objections. In an offer of proof, Pless testified outside the presence of the jury that injuries fall into three classifications: mild, moderate and severe. Pless testified that Kail's injuries were mild with some moderate characteristics. The court found that, although the fact of bodily injury was an element of the government's case, the degree of injury was not relevant to the charge

against Christian. The court therefore restricted Dr. Pless's testimony to the causation of Kail's injuries rather than the severity of the injuries. Christian's theory of defense was that Kail suffered the injuries during his arrest and when he banged his own head against the Plexiglas shield in the police cruiser. The court therefore allowed Dr. Pless to testify as to whether the force used during the arrest, the head-banging incident, the alleged beating, or some combination of those three incidents served as the cause of Kail's injuries. The court excluded only a discussion on the severity of the injuries. Christian argues that the court erred in excluding testimony regarding the severity of the injuries because he was charged with a specific intent crime. He maintains that evidence on the severity of the injuries was relevant to whether there was a deprivation of rights in the first place. He points to two jury instructions in support of this argument:

> To determine whether a use of force is within the lawful authority of a police officer, you may consider the extent of the injury suffered[.]

R. 93, Jury Instruction 9.

> One factor which you may consider in your determination of whether the defendant had the requisite specific intent to deprive the victim of a right is the nature and degree of force used by the defendant.

R. 93, Jury Instruction 11. Because the extent of injury was relevant to whether the use of force was lawful and also relevant to specific intent, Christian argues that the exclusion of Dr. Pless's testimony was reversible error. The government concedes that the degree of injury could be relevant in some cases but not here because no amount of force was necessary to subdue a person who was verbally abusive but posed no physical threat. The government maintains that Christian's defense at trial was that he never threw a punch and never applied his knee to Kail's face.

We review the district court's decision to limit expert testimony on a specific issue for abuse of discretion. *United States v. Crotteau*, 218 F.3d 826, 831 (7th Cir. 2000). The district court concluded that the degree of severity of the injuries was not at issue in the trial and that the fact of injury was the only issue before the jury. The court allowed Dr. Pless to testify whether the injuries were caused by the force applied at arrest, the head-banging incident, the alleged attack by Christian or some combination of those events, but did not allow testimony regarding the severity of the injuries. As the government admits, the degree of severity may be relevant in some cases to the issue of specific intent. The jury instructions themselves, to which the government did not object, indicate that, in determining whether a use of force is lawful, the jury may consider the extent of the injuries. But we believe that any error in excluding Dr. Pless's testimony about the severity of Kail's injuries (and we are not concluding that the exclusion was error) was harmless. This was not a complex medical issue on which expert testimony was needed. Kail was tackled to the ground during his arrest, slammed his own head on a Plexiglas shield as he rode to the jail, and was allegedly kneed and punched by Christian at the jail. His injuries included a bloody lip and swelling. These are common injuries and the jury was provided with photographs of Kail after the incident. Christian's defense was that he did not knee or punch Kail at all. The jury's task was to determine who was telling the truth about the jailhouse incident. Expert testimony about the degree of swelling would not assist them in making that determination. The district court did not abuse its discretion in excluding evidence regarding the degree of injury suffered given that it allowed testimony about the cause of the bruises and given that the jury viewed photographs of the injuries.

## C.

Finally, Christian maintains that the evidence was insufficient to prove that he acted under color of law when he attacked Kail at the jail. He argues that acts of officers in their personal pursuits and not undertaken in their official duties are not under color of law. Christian was not involved in Kail's arrest or transport to the jail. Once Kail was released to jail officials, Christian contends, Kail was not under Christian's control as a police officer. Rather, he encourages us to find that the incident was at worst a state law battery. The government counters that Christian was on duty and in uniform at the time of the attack. Moreover, his contact with Kail resulted only because, as a police officer, he had access to the processing area of the jail.

Christian has an uphill battle in making out a sufficiency of the evidence claim. *United States v. Irorere*, 228 F.3d 816, 822 (7th Cir. 2000). Because the government prevailed at trial, we view the evidence in the light most favorable to the government. *Id.*; *United States v. Owens*, 301 F.3d 521, 527 (7th Cir. 2002). Only when the record contains no evidence from which the jury could find guilt beyond a reasonable doubt may an appellate court overturn a verdict. *Irorere*, 228 F.3d at 822. At the time of the attack, Christian was, as we noted, in uniform and on duty. He was in the processing area of the jail, and had access to Kail because he was at the jail on police business. When he attacked Kail, however, he did so in response to Kail's racial epithet, and so was acting for personal reasons.

A number of cases have addressed the meaning of the phrase "under color of law." In 1941, the Supreme Court addressed the issue in the context of a conspiracy to prevent the official ballot count in a primary election. *United States v. Classic*, 313 U.S. 299 (1941). The court remarked:

> The alleged acts of appellees were committed in the
> course of their performance of duties under the Louisi-

ana statute requiring them to count the ballots, to record the result of the count, and to certify the result of the election. Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken "under color of" state law.

313 U.S. at 325-26. A few years later, the Court had occasion to revisit the issue in a context very analogous to the instant case. *Screws v. United States*, 325 U.S. 91 (1945). In that case, three police officers beat to death an arrestee, claiming that he had reached for a gun (he was handcuffed at the time) and used insulting language to the officers as they removed him from the police car at the local court house. Later evidence showed that one of the officers held a grudge against the arrestee and had threatened to "get" him. 325 U.S. at 92-93. In finding that the officers acted under color of law, the Court stated:

They were officers of the law who made the arrest. By their own admissions they assaulted [the arrestee] in order to protect themselves and to keep their prisoner from escaping. It was their duty under Georgia law to make the arrest effective. Hence, their conduct comes within the statute.

325 U.S. at 107-08. Comparing the facts to *Classic*, the Court noted that the cases were indistinguishable because, in each, officers of the State were performing official duties, and in each, the power they were authorized to exercise was misused. 325 U.S. at 110.

Our more recent cases have further clarified the limits of the meaning of "under color of law." We have stated that a police officer may be acting under color of law even though the officer is off-duty at the time of the deprivation of rights. *Latuszkin v. City of Chicago*, 250 F.3d 502, 505 (7th Cir. 2001). "Deciding whether a police officer acted under color of state law should turn largely on the nature of

the specific acts the police officer performed, rather than on merely whether he was actively assigned at the moment to the performance of police duties." *Pickrel v. City of Springfield, Illinois*, 45 F.3d 1115, 1118 (7th Cir. 1995). An officer can be held to be acting under color of law when he or she is in uniform and displaying a badge. *Id. See also United States v. Tarpley*, 945 F.2d 806, 809 (5th Cir. 1991), *cert. denied*, 504 U.S. 917 (1992) (deputy sheriff was acting under color of law when he assaulted his wife's former lover out of personal jealousy; an air of official authority pervaded the incident because the officer used his service revolver, summoned fellow officers to help him, and ran the victim out of town in a squad car); *United States v. Colbert*, 172 F.3d 594, 596 (8th Cir. 1999) (officer acted under color of law even though he was not on duty at the time he attacked a prisoner, his motivation was personal and his anger at the prisoner arose from a personal cause; the events took place in a restricted area of a jail that he was able to access as a police officer, he had keys to the cell and had authority to remove the victim from his cell).

In the context of these cases, we think it is clear that Christian fails in his sufficiency of the evidence argument. He was on duty and in uniform at the time of the attack. He enlisted the aid of two other police officers. The attack took place in the processing area of the jail and Christian later told Kail that he (Christian) could go anywhere in the jail that he wished. Although he was not in custody of Kail and did not participate in his arrest, he pushed the jailers aside to gain access to him. The jury had plenty of evidence from which to conclude that Christian was acting under color of law. The fact that he attacked Kail for personal reasons and the fact that he was not the arresting officer do not render the result otherwise.

### III.

In sum, the government was not estopped from charging Christian with a felony merely because it charged his co-defendants with a misdemeanor. Nor did the misdemeanor charges constitute an admission that Kail suffered no bodily injury. The district court did not abuse its discretion in declining to admit expert testimony regarding the extent of Kail's injuries. Finally, the evidence was sufficient for the jury to conclude that Christian attacked Kail under color of law. For all of these reasons, we affirm the judgment of the district court.

AFFIRMED.

A true Copy:
    Teste:

_____
***Clerk of the United States Court of Appeals for the Seventh Circuit***