Dragan **PALDRMIC**, Plaintiff,

v.

**ALTRIA CORPORATE SERVICES, INC., and Philip Morris USA, INC., Defendants.**

No. 03–C–0649.

United States District Court, E.D. Wisconsin.

July 20, 2004.

---

Alexander Barnett, John Cabaniss, Milwaukee, WI, for Plaintiff or Petitioner.

M. Christine Cowles, Milwaukee, WI, for Defendant or Respondent.

## DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Dragan Paldrmic commenced this putative class action in state court alleging that defendants Altria Corporate Services, Inc. and Philip Morris USA, Inc. (collectively "defendant" or "Philip Morris") violated Wisconsin statutory and common law by manipulating the tar and nicotine content of Marlboro light cigarettes and representing to the public that such cigarettes contained lower amounts of tar and nicotine than was actually the case.

Philip Morris removed the suit to this court under 28 U.S.C. § 1442(a)(1), which authorizes the removal of an action commenced in state court against a federal officer or agency or a "person acting under" such officer or agency. Philip Morris contends that the actions for which it is being sued were directed by the Federal Trade Commission ("FTC"). Plaintiff moved to remand the case to state court, and that motion is before me now. Plaintiff argues that Philip Morris is judicially estopped from arguing that it was acting under federal direction because it espoused the contrary position in another case; and, alternatively, that it is not entitled to the protection of § 1442(a)(1) because corporations are not "persons" within the statute and because it is not being sued for acts directed by the FTC.

## I. FACTS

Plaintiff alleges that from 1971 until the present Philip Morris violated Wisconsin law by falsely representing that one of its products, Marlboro light cigarettes, contained low amounts of tar and nicotine. According to the FTC, which regulates cigarette advertising, a low tar cigarette is one containing less than fifteen milligrams of tar as measured by the Cambridge Filter System ("Cambridge System"), the only method the FTC has recognized for measuring the tar and nicotine content of a cigarette. Plaintiff further alleges that, while promoting Marlboro lights as having low tar and nicotine, Philip Morris designed and manufactured the cigarette to deliver higher levels of tar and nicotine than the Cambridge System could measure. Plaintiff contends that defendant did this to fool the machine used by the Cambridge System and to achieve artificially low tar and nicotine test ratings to bolster its false claim that Marlboro lights were "light." Plaintiff contends that Philip Morris manipulated the Cambridge Sys-

tem by such methods as placing ventilation holes (which allow smokers to inhale greater amounts of air and reduce the intake of tar and nicotine) in areas of the cigarette filter that are covered by the smoker's lips or fingers, thus causing the actual amount of tar and nicotine taken in to exceed the amount measured by the test; by designing cigarettes to increase their puff and/or frequency volume; and by using chemical processes and additives to increase the discrepancy between the measured and actual amounts of tar and nicotine. Plaintiff states that Philip Morris conducted its own internal tests to ensure that the actual amounts of tar and nicotine in the cigarettes remained at higher levels than the test disclosed. Plaintiff alleges that this was done to give "light" cigarette smokers the nicotine "satisfaction" of regular cigarettes, thus making it harder for them to quit smoking.

In support of its removal motion, Philip Morris points out that the Cambridge System for testing the tar and nicotine content of cigarettes was developed by the FTC. Further, the FTC did not permit a cigarette to be advertised as "light" unless its tar content as measured by the Cambridge System was less than fifteen milligrams. Thus, Philip Morris argues, it is being sued for actions directed by the FTC, and plaintiff's allegations unavoidably challenge the directives, policies and conduct of the FTC. Philip Morris asserts that the case is removable because, ultimately, plaintiff cannot prevail unless he proves that the FTC method of measuring tar and nicotine is flawed.

It is undisputed that the FTC has long been involved in the matter of cigarette companies' claims regarding the tar and nicotine content of cigarettes. The agency's activity during the period through 1985 was summarized in *FTC v. Brown & Williamson Tobacco Corp.*, 778 F.2d 35, 37 (D.C.Cir.1985). There the court said that

since at least the 1950s, the FTC has been concerned about the validity of tar and nicotine content claims in cigarette advertisements. In 1955, the Commission published cigarette advertising guides advising manufacturers to make no representations about the tar and nicotine content of a cigarette that could not be supported with reliable scientific evidence. By the mid–1960s, the FTC became concerned about the absence of a standard method of testing cigarette delivery of tar and nicotine and, in 1967, adopted the Cambridge System as the proper testing method.

The Cambridge System test utilizes a smoking machine that takes a thirty-five milliliter puff of two seconds' duration on a cigarette every sixty seconds until the cigarette is smoked to a specific butt length. The tar and nicotine collected by the machine is then weighed and measured. This provides an objective basis for assessing the relative amounts of tar and nicotine different cigarettes will deliver when they are smoked in the way specified by the Cambridge System test. The test does not measure the amount of tar or nicotine that any individual smoker may receive since that quantity will depend on individual smoking behavior.

In 1970, the FTC proposed promulgating a rule requiring disclosure of FTC tar and nicotine ratings in cigarette advertising. In response, the leading cigarette companies agreed among themselves to a voluntary disclosure plan. This plan provided that the cigarette manufacturers would disclose the Cambridge System tar and nicotine figures in all advertising for their cigarettes. Upon accepting the 1970 agreement, the FTC indefinitely suspended its rulemaking proceeding.

Philip Morris points out additional FTC involvement in the measurement of tar and nicotine in cigarettes and the advertising of such results. It states that the FTC

has long been aware that the Cambridge System did not measure the volume of smoke that any particular person drew from a cigarette but nevertheless retained it as the only sanctioned method for measuring tar and nicotine. Philip Morris also indicates that the FTC conducted tar and nicotine measurements in its own laboratories until 1987 when it ordered an industry-funded laboratory to assume this responsibility. However, even after the transfer, the FTC maintained strict control over the testing. Moreover, Philip Morris indicates that the FTC has reevaluated its testing method periodically but declined to abandon it. Further, the FTC has allowed cigarette companies to advertise cigarettes with less than fifteen milligrams of tar as "low tar" cigarettes and "lights" if the measurements were based on the FTC's Cambridge System test.

## II.  REMOVAL STANDARDS

█ On a motion to remand, the party invoking removal authority bears the burden of establishing the court's jurisdiction, and all doubt is resolved in favor of remand. *Milwaukee Carpenter's Dist. Council Health Fund v. Philip Morris, Inc.*, 70 F.Supp.2d 888, 892 (E.D.Wis.1999). Thus, in the present case, Philip Morris must demonstrate that removal is proper. In evaluating a motion for remand, a court considers the allegations in plaintiff's complaint, and the statements in defendant's notice of removal. *Ryan v. Dow Chem. Co.*, 781 F.Supp. 934, 939 (E.D.N.Y.1992).

█ Section 1442(a)(1) is designed to prevent states from interfering with the implementation of federal law and seeks to accomplish this purpose by allowing those whose federal activity may be inhibited by state court actions to remove to the presumably less-biased forum of federal court. *Id.* The fact that the statute permits removal regardless of whether the removed action could have been brought in federal court presents a potential constitutional problem because Congress may only confer federal court jurisdiction over cases of the type enumerated in Article III Section 2 of the Constitution, i.e., cases "arising under" federal law. And, as a general rule, state law claims are not removable based on the presence of a federal defense. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). However, under the federal officer removal statute, suits against federal officers and those whom they direct may be removed despite the nonfederal cast of the complaint; the federal question element is satisfied if the defense depends on federal law. *Jefferson County v. Acker*, 527 U.S. 423, 431, 119 S.Ct. 2069, 144 L.Ed.2d 408 (1999).

Philip Morris's defense to plaintiff's state law false advertising and unjust enrichment claims is that plaintiff is precluded from recovering on such claims because all state law theories of recovery have been preempted by federal regulation of cigarette advertising. *See, e.g., Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000) (finding state law tort claims preempted by federal agency's policy judgment regarding use of airbag technology in motor vehicles). Preemption is a colorable federal law defense; thus, there is no constitutional bar to removal of the case.

█ To remove under § 1442(a)(1), Philip Morris must demonstrate that: (1) it acted under the direction of a federal officer; (2) it raises a federal defense to plaintiff's claims; (3) there is a causal nexus between plaintiff's claims and the acts it performed under the direction of a federal officer; and (4) it is a person within the meaning of the statute. *Mesa v. California*, 489 U.S. 121, 124-25, 109 S.Ct. 959, 103 L.Ed.2d 99 (1989); *Pack v. AC & S, Inc.*, 838 F.Supp. 1099, 1101 (D.Md.1993); *Fung v. Abex Corp.*, 816 F.Supp. 569, 571–

72 (N.D.Cal.1992). As stated, Philip Morris has raised a colorable federal defense to plaintiff's claim. The questions of whether it acted under federal direction and of whether plaintiff's claims resulted from such acts tend to converge into one inquiry: whether defendant is "being sued 'based upon actions taken pursuant to federal direction.'" *Ryan,* 781 F.Supp. at 945 (quoting *Gulati v. Zuckerman,* 723 F.Supp. 353, 358 (E.D.Pa.1989)).

## III. DISCUSSION

### A. Whether Philip Morris is Barred from Removing Pursuant to § 1442(a)(1) by Judicial Estoppel

■ Judicial estoppel "is an equitable concept providing that a party who prevails on one ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground." *United States v. Christian,* 342 F.3d 744, 747 (7th Cir.2003); *United States v. Hook,* 195 F.3d 299, 306 (7th Cir.1999). "The purpose of judicial estoppel is to 'protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories.'" *Hook,* 195 F.3d at 306 (quoting *Levinson v. United States,* 969 F.2d 260, 264 (7th Cir.1992)).

■ In the Seventh Circuit, judicial estoppel applies when (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Christian,* 342 F.3d at 747. The court has generally considered judicial estoppel only when there are successive litigations arising from the same factual circumstances. *Ogden Martin Sys. v. Whiting Corp.,* 179 F.3d 523, 527 (7th Cir. 1999).

■ In the present case, plaintiff argues that judicial estoppel should apply because of the position that Philip Morris took in *Brown v. Philip Morris Inc.,* 250 F.3d 789 (3rd Cir.2001). In *Brown,* the plaintiffs brought a *Bivens* action,[1] alleging that Philip Morris violated their constitutional rights under color of federal law by targeting advertising of mentholated tobacco products to African Americans. *Id.* at 794–795. To prevail, plaintiffs had to show that Philip Morris was a federal actor, and they attempted to meet this burden by showing that Philip Morris was subject to and complied with the Federal Cigarette Labeling and Advertising Act. However, Philip Morris prevailed on its argument that compliance with the statute was not enough to make it a federal actor.

Even assuming that Philip Morris has in the present case taken a position inconsistent with *Brown,* plaintiff still cannot prevail on his judicial estoppel argument because he cannot satisfy the second prong of the judicial estoppel standard. Plaintiff cannot show the facts at issue to be the same in both cases. *See Christian,* 342 F.3d at 747. In *Brown,* the facts concerned the alleged targeting of menthol cigarettes to African Americans, and the issue was whether compliance with federal labeling requirements made defendant a federal actor within *Bivens.* In the present case, the facts concern the alleged false advertising of the tar and nicotine content of cigarettes, and the issue is whether compliance with FTC measuring requirements constitutes a basis for removal. The facts of the cases are suffi-

---

1. *See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (holding that violation of Fourth Amendment by federal agent acting under color of his authority gave rise to cause of action).

ciently different that judicial estoppel does not apply. *See Himel v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.,* 596 F.2d 205, 210–211 (7th Cir.1979). It cannot be said that *Brown* and the present case represent successive litigation arising from the same factual circumstances. *Ogden Martin Sys.,* 179 F.3d at 527.

Thus, the doctrine of judicial estoppel does not preclude defendant from arguing that removal is proper under § 1442(a)(1).

## B. Whether Philip Morris is a Person Within § 1442(a)(1)

■ Plaintiff argues that private corporations are not persons within § 1442(a)(1) and that, therefore, Philip Morris may not remove this action. Section 1442(a)(1) does not define "person," and courts have divided on the issue of whether a corporation can be a "person" under such section. The majority view is that a corporation can be a person within the meaning of § 1442(a)(1). *See, e.g., Winters v. Diamond Shamrock Chem. Co.,* 149 F.3d 387, 398 (5th Cir.1998); *Camacho v. Autoridad de Telefonos de P.R.,* 868 F.2d 482, 486 (1st Cir.1989); *Peterson v. Blue Cross/ Blue Shield,* 508 F.2d 55, 58 (5th Cir.1975); *Crackau v. Lucent Techs.,* No. CIV 03–1376(DRD), 2003 WL 21665135, at *3 (D.N.J. June 25, 2003); *Arness v. Boeing N. Am., Inc.,* 997 F.Supp. 1268, 1271–72 (C.D.Cal.1998); *Good v. Armstrong World Indus., Inc.,* 914 F.Supp. 1125, 1127–28 (E.D.Pa.1996); *Ryan,* 781 F.Supp. at 946; *Bakalis v. Crossland Savings Bank,* 781 F.Supp. 140, 144 (E.D.N.Y.1991). However, there are a number of decisions to the contrary, including one from this district. *Gensplit Fin. Corp. v. Foreign Credit Ins. Ass'n,* 616 F.Supp. 1504, 1508–10 (E.D.Wis.1985).

In *Ryan,* the court reframed the issue and asked what definition of person made sense in light of the purpose of the statute, i.e.:

whether a purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer in such a manner that state court suits against corporations arising out of those activities could be a direct interference with the implementation of federal law.

*Ryan,* 781 F.Supp. at 946. The court went on to state that it was not difficult to imagine such a circumstance and offered the example of federal agents ordering a telephone company to intercept and record the phone conversations of a suspected criminal pursuant to Title III of 18 U.S.C. § 2510–20. Thus, the court concluded that corporations could be persons within the meaning of § 1442(a)(1).

I find the reasoning of the *Ryan* court to be persuasive and conclude that corporations may be persons within the meaning of § 1442(a)(1). This position is further supported by 1 U.S.C. § 1, which states that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise ... the word[ ] 'person' ... include[s] corporations ... as well as individuals."

## C. Whether Philip Morris is Being Sued for Actions Taken Pursuant to Federal Direction

■ In order to determine whether a defendant is being sued for acts engaged in pursuant to federal direction, a majority of courts have held that such defendant must prove that a federal officer exercised "direct and detailed control" over it. *Ryan,* 781 F.Supp. at 938; *see also Pack,* 838 F.Supp. at 1102–03; *Fung,* 816 F.Supp. at 572. "[P]rivate corporations [can] remove only when the corporation is so intimately involved with government functions as to occupy essentially the position of an employee of the government."

*Bakalis,* 781 F.Supp. at 145; *see also Virden v. Altria Group,* 304 F.Supp.2d 832 (N.D.W.Va. 2004) ("If the [private] actor is effectively an agent or employee of the government because its activities are controlled and funded by the government, it is entitled to the same jurisdictional protection as the government itself."). Removal under § 1442(a)(1) will not be permitted if the defendant cannot establish direct and detailed control but only that the relevant acts occurred under the general auspices of a federal officer, as would be the case, for example, if the defendant were simply a participant in a regulated industry. *Guillory v. Ree's Contract Serv., Inc.,* 872 F.Supp. 344, 347–48 (S.D.Miss.1994); *Fung,* 816 F.Supp. at 572; *Ryan,* 781 F.Supp. at 947.

Suits virtually identical to the one before me have been brought in other jurisdictions, and courts have generally declined to permit Philip Morris to remove, concluding that the FTC did not exercise direct and detailed control over the acts for which it was being sued. *See Arnold v. Philip Morris USA Inc.,* No. 03–CV–0403–MJR (S.D.Ill. March 2, 2004); *Stern v. Philip Morris USA Inc.,* No. 03–CIV–2556 (WJM) (D.N.J. Feb. 13, 2004); *Virden,* No. 5:03CV61; *Pearson v. Philip Morris,* No. 03–CV–178–HA (D.Or. Aug. 8, 2003); *Tremblay v. Philip Morris, Inc.,* 231 F.Supp.2d 411 (D.N.H.2002).[2] For several reasons, I agree with the conclusion of these courts. First, Philip Morris has not established that its use of the Cambridge System test results in its advertisements was mandated by the FTC. Second, and more importantly, even assuming that the FTC did mandate such use, the actions for which Philip Morris is being sued primarily involve the manner in which it designed and manufactured light cigarettes, which

actions were not taken pursuant to FTC direction.

With respect to the first of the above reasons, Philip Morris argues that the cigarette companies' 1970 voluntary agreement to use the Cambridge System's tar and nicotine measurements in their advertising was entered into to avoid the FTC's promulgation of a formal rule. However, while it may be true that the cigarette companies preferred an agreement to a regulation, the fact remains that they entered into the agreement voluntarily. *See, e.g., Virden,* No. 5:03CV61, slip op. at 26, 27 (stating that "the most that can be said is that the FTC has been impliedly regulating the tobacco industry through its tacit acceptance of a voluntary private agreement made thirty years ago" and that although "[o]n some level the FTC clearly has coercive control over the tobacco companies' tar and nicotine advertising based on its power to regulate deceptive advertising … neither the right to control, nor the threat of taking control, constitutes the direct and detailed control required for the application of federal officer removal jurisdiction"). It is also worth noting that in *Brown & Williamson,* the court declined to permit the FTC to enjoin a cigarette company from making tar and nicotine claims in its advertising that were not based on the Cambridge System of measurement, stating that it would not "enshrine the current FTC system as the sole legitimate testing method." 778 F.2d at 44–45.

Even assuming, however, that when it advertised tar and nicotine levels Philip Morris was acting under FTC direction, it is not being sued primarily for these acts. Rather, the acts for which it is being sued involve the manner in which it designed

---

**2.** *But see Watson v. Philip Morris Cos.,* No. 4:03–CV–519 GTE, 2003 WL 23272484 (E.D.Ark. Dec.12, 2003).

and manufactured Marlboro Lights, acts that most assuredly were not performed under the direct and detailed control of the FTC. The essence of plaintiff's claim is that Philip Morris intentionally manipulated the design and composition of its cigarettes to produce Cambridge System measurements that were misleading to the public. Although the Cambridge System is deeply intertwined with plaintiff's allegations, the gravamen of his lawsuit is that defendant, fully aware that it had agreed to communicate tar and nicotine test results within certain parameters, designed and manufactured its product so as to use the test to mask the truth about its product.

The *Tremblay* court put the matter this way:

> Nowhere in the complaint do the plaintiffs challenge the enforcement or wisdom of any FTC policy, procedure or regulation. Further, the complaint does not allege that Philip Morris is liable simply for complying with the Cambridge Filter Method and FTC advertising policies. Rather it clearly and concisely alleges that Philip Morris engages in a course of conduct aimed at manipulating the FTC's policies by exploiting loopholes in the Cambridge Filter Method.

231 F.Supp.2d at 419. And, in reaching the same conclusion, the court in *Pearson* stated as follows:

> Read in context, the plaintiffs do not challenge the use of the Cambridge Filter Method. Rather, the Cambridge Filter Method description is part of the underlying facts used by the plaintiffs to support their allegation that defendants manipulated the test and intentionally marketed deceptive results. The FTC certainly did not require parties to manipulate the use of the test or to deceptively market the results as "light" and as having "lowered tar or nicotine"—

which is the conduct complained of by the plaintiffs.

*Pearson,* No. 03–CV–178–HA, slip op. at 10; *see also Arnold,* No. 03–CV–0403–MJR; *Stern,* No. 03–CIV–2556 (WJM); *Virden,* No. 5:03CV61; *but see Watson,* 2003 WL 23272484.

The FTC did not direct Philip Morris as to how to design or manufacture its product. It adopted the Cambridge System to provide "smokers seeking to switch to lower tar cigarettes with a single, standardized measurement with which to choose among existing brands, not to direct and control the design or production of low tar cigarettes." *Tremblay,* 231 F.Supp.2d at 418; *see also Arnold,* No. 03–CV–0403–MJR, slip op. at 7 (stating that the FTC's concern appears to have been that of informing consumers of what they were buying, not of controlling the actual design and production of the cigarettes consumers were buying). That the FTC participated "in obtaining Philip Morris's agreement to disclose tar and nicotine levels for its products produced by the Cambridge Filter Method does not transform its design, manufacture, or sales practice into actions conducted under the direction of agency." *Tremblay,* 231 F.Supp.2d at 418.

Moreover, the present case is distinguishable from those relied on by Philip Morris in support of its argument that it is being sued for acts taken pursuant to federal direction. *See, e.g., Crackau,* 2003 WL 21665135, at *3 (holding that a military contractor that manufactured radar equipment was entitled to federal officer removal where the military provided the manufacturing specifications, monitored the defendant's compliance with those specifications, and prohibited the defendant's unilateral modifications of the equipment without military approval); *Pack,* 838 F.Supp. at 1103 (holding that military contractor that manufactured tur-

bine generators was entitled to federal officer removal where the government maintained "control over the construction, design and testing of the turbines" and specified the type of asbestos cloth used); *Fung*, 816 F.Supp. at 572 (holding that military contractor that built submarines was entitled to federal officer removal where the government provided specifications as to how the submarines were to be built, monitored the contractor's compliance with those specifications and required that all contract supplies were subject to its inspection and approval).

In the above cases, the plaintiffs sought to impose liability on government contractors for negligently designing products. The defendants were being sued based on their designs of products, which designs were based on precise and mandatory government specifications. The actions for which the defendants were sued were required by the federal government, and the level of federal control of their conduct was such that they were de facto government employees. *See, e.g., Fung,* 816 F.Supp. at 572–73; *cf. Bakalis,* 781 F.Supp. at 145 (stating that private corporations can only remove pursuant to federal officer removal "when the corporation is so intimately involved with government functions as to occupy essentially the position of an employee of the government."). In the present case, this sort of governmental direction is absent. The FTC did not direct Philip Morris on how to design or manufacture Marlboro Lights. And, although it may have regulated Philip Morris's advertising concerning tar and nicotine content, such regulation involved an insufficient degree of control to enable one to reasonably characterize Philip Morris as a de facto government employee.

Philip Morris also cites *Oregon v. Cameron,* 290 F.Supp. 36 (D.Or.1968), which is not a contractor case, but which is also distinguishable. In *Cameron,* the court allowed federal officer removal of a trespass suit against VISTA "volunteers" because they were "paid by the United States," performed work "contemplated by [a] federal statute," were hired and trained by a federal officer and, through a clear "chain of command," were responsible to a federal officer. However, unlike the present case, the VISTA workers in *Cameron* were so "intimately involved with government functions as to occupy essentially the position of an employee." *Bakalis,* 781 F.Supp. at 145. Philip Morris's position is not analogous. At most, it is a private corporation doing business in a regulated industry. *See Tremblay,* 231 F.Supp.2d at 418 (stating that although defendant participates in a regulated industry, "this is not enough to demonstrate that it acted under the direction of a federal officer when it designed its light cigarettes and elected to market them as low in tar and nicotine.")

Philip Morris also suggests that the FTC was aware of the shortcomings of the Cambridge System as a means of measuring tar and nicotine and that such fact strengthens the argument that Philip Morris was operating under its direct and detailed control. This assertion is unconvincing. That the FTC knew that the Cambridge System test was flawed does not mean that it directed Philip Morris to design its product to exploit that flaw. *See, e.g., Virden,* No. 5:03CV61, slip op. at 26 ("Even if the defendants' alleged wrongdoing is based in part on their exploitation of weaknesses in a testing method endorsed by the FTC, the FTC . . . did not direct them to 'trick' the testing procedure, and did not require them to disseminate misleading information.").

## IV. CONCLUSION

For the reasons discussed above,

**IT IS ORDERED** that this case is remanded to state court.