In re FV STEEL AND WIRE COMPANY, et al.,[1] Reorganized Debtors.

No. 04–22421–svk.

United States Bankruptcy Court,
E.D. Wisconsin.

Sept. 1, 2006.

1. The Reorganized Debtors are the following entities: FV Steel and Wire Company, Keystone Consolidated Industries, Inc., DeSoto Environmental Management, Inc., J.L. Prescott Company, Sherman Wire Company (f/k/a DeSoto, Inc.), and Sherman Wire of Caldwell, Inc.

Bruce G. Arnold, Daryl L. Diesing, Patrick B. Howell, Lead Attorney, Milwaukee, WI, David L. Eaton, Tasneem K. Goodman, Ryan S. Nadick, Lead Attorney, Kirkland & Ellis LLP, Chicago, IL, for Reorganized Debtors.

MEMORANDUM DECISION ON APPLICATION OF JUDICIAL ESTOPPEL TO CLAIM NO. 1285 FILED BY NICOLE CLARK

SUSAN V. KELLEY, Bankruptcy Judge.

In early 2002, Nicole Clark was an employee of Keystone Consolidated Industries, Inc. d/b/a Keystone Steel & Wire ("Keystone"); however, on May 10, 2002, her employment with Keystone was terminated. On September 25, 2002, Clark filed charges with the Equal Employment Opportunities Commission (EEOC) claiming that Keystone discriminated against and harassed her on the basis of her race and gender, and that Keystone terminated her in retaliation for having complained about the discrimination.

The EEOC had taken no action on the charges when Clark filed a chapter 7 bankruptcy petition in the Central District of Illinois on December 2, 2002. Although she was represented by Attorney Karl Niebuhr in filing that chapter 7 case, Clark failed to list her claim against Keystone as an asset in her bankruptcy schedules or pending lawsuit in her statement of financial affairs. In an affidavit dated June 22, 2006, Clark contends that she informed her attorney of the potential discrimination action, but he apparently omitted it from her bankruptcy filings; she further suggests that she did not realize that the discrimination claim was an asset of her bankruptcy estate or that she should have included it in her statement of affairs or schedules. This omission was not brought to the bankruptcy court's attention; Clark received her discharge on March 17, 2003, and her bankruptcy case subsequently was closed as a "no asset case." Keystone and the other Debtors in this case filed their chapter 11 petitions on February 26, 2004; this Court established July 1, 2004 as the Claims Bar Date for Keystones's non-governmental creditors.

On May 27, 2004, the EEOC responded to Clark's discrimination complaint with a Determination Letter, stating that there was reasonable cause to believe that Keystone discriminated against Clark. This Determination Letter invited both Clark and Keystone to participate in conciliation efforts. On June 21, 2004, before the Claims Bar Date had expired, Clark filed proof of claim number 1285, claiming damages in the amount of $380,000 against Keystone for her discrimination claim. The EEOC then sent Clark a Notice of Right to Sue under Title VII on August 25, 2004, stating that the EEOC had found reasonable cause to believe that discrimination had occurred, but a conciliation had not been reached. The Notice informed Clark that she had the right to sue Keystone in a court of competent jurisdiction, but that she would be required to sue within 90 days of her receipt of the Notice, or her right to sue would be lost—Clark contends that she received this Notice on August 27, 2004.

Keystone filed the Eleventh Omnibus Objection to Claims on November 15, 2004, which included an objection to Clark's proof of claim. The Objection states as its sole grounds that the claim is not allowable under § 502(b)(1) of the Bankruptcy Code. That section provides that a court shall allow a claim except to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." The Claim Objection required Clark to file a Response and to attend a hearing on the Objection. On December 6, 2004, Attorney Patricia Benassi timely filed Clark's Response to the Eleventh Omnibus Objection, detailing the elements of Clark's discrimination and harassment claim and asserting that, within ten days, Clark would be moving to lift the automatic stay to commence an action in federal district court. That Motion for Relief from Stay was never filed, apparently because of the parties' continuing settlement discussions.

The Court confirmed the Debtors' Third Amended Plan on August 10, 2005. Clark's claim, however, was still in limbo. Rather than address Clark's claim at any of the prior hearings on the Omnibus Objections, the Debtors repeatedly adjourned the matter. Although Clark filed a response to the Debtors' Objection in December 2004, the first "substantive" hearing on her claim was not held until November 9, 2005. Unfortunately, at that hearing, Clark's counsel stated that she was not notified of the hearing until the day before; it appears that Clark's claim inadvertently disappeared from the adjournment notices and slipped through the cracks. Nevertheless, the parties advised that the matter was under discussion and that they were attempting to reach a settlement. The Court provided additional time to allow Keystone and Clark to resolve the amount of her claim.

In December 2005, and apparently in the midst of these settlement discussions, Keystone's attorneys informed Attorney Benassi that Clark had failed to list the discrimination claim in her personal bankruptcy case. In January 2006, Clark informed the trustee of her closed bankruptcy case, Charles E. Covey, that she had inadvertently failed to include the discrimination claim against Keystone in her statement of financial affairs or schedules. The trustee promptly moved to reopen the case, and on January 24, 2006, the U.S. Bankruptcy Court for the Central District of Illinois reopened Clark's bankruptcy case. The trustee issued a notice of potential distribution to creditors, and several creditors have responded by filing claims in the reopened case. Clark has also amended her Schedule B to include the discrimination claim. In March 2006, the bankruptcy court in Clark's case granted the trustee's application to employ Attorney Benassi to represent the bankruptcy estate in pursuing Clark's discrimination claims against Keystone. Accordingly, Attorney Benassi represents Clark's bankruptcy trustee with respect to Keystone's Objection to Clark's proof of claim.

This matter has been adjourned several more times since the initial November 9, 2005 hearing in order to facilitate settlement. At a status conference held May 30, 2006, the parties finally informed the Court that they could not agree, and Keystone's attorney posited that Clark's proof of claim should be disallowed on the basis of judicial estoppel. The Court set a briefing schedule on the sole issue of whether Clark was judicially estopped from asserting her claim against Keystone, and took the matter under advisement. The Court held another hearing on August 24, 2006 after determining that judicial estoppel

does not apply to bar Clark's claim in this bankruptcy case, and issues this Memorandum Decision as its findings of fact and conclusions of law.

## DISCUSSION

 Judicial estoppel "is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground." *U.S. v. Christian,* 342 F.3d 744, 747 (7th Cir.2003). This doctrine's purpose is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment. *New Hampshire v. Maine,* 532 U.S. 742, 749–750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Judicial estoppel may apply when

(1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Christian,* 342 F.3d at 747. "Judicial estoppel is strong medicine, however, and it should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake. The rule looks toward cold manipulation and not an unthinking or confused blunder." *Fairchild v. Touchtunes Music Corp.,* No. 01 C 0699, 2002 WL 31833768, at *2, 2002 U.S. Dist. LEXIS 24139, at *5 (N.D.Ill.2002) (internal quotations and citations omitted).

 "Estoppel does not eliminate a claim or defense, but only prohibits a particular party from asserting it." *In re Cassidy,* 892 F.2d 637, 642 (7th Cir.1990). Since "[e]stoppel is an equitable concept, ... its application is therefore within the court's sound discretion. It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake, or where there is only an appearance of inconsistency between the two positions but both may be reconciled." *Id.* (internal citations and quotations omitted).

 Keystone seeks to disallow Clark's claim under this doctrine. Keystone quotes several cases that outline the general purpose behind the doctrine of judicial estoppel, namely, that judicial estoppel prevents a party from benefitting from taking two opposite legal positions on the same matter. Focusing on the fact that Clark initially omitted the discrimination claims from her statement of financial affairs and schedules, Keystone argues that she intentionally and wrongfully contradicted herself.

In response to Keystone's argument, Clark dissects the doctrine and gives four reasons why it does not apply to these facts. First, citing *Biesek v. Soo Line Railroad Co.,* 440 F.3d 410 (7th Cir.2006), Clark argues that because the discrimination claims actually belong to the trustee, judicial estoppel does not bar the pursuit of her claims. Second, the reopening of the bankruptcy case and subsequent amendment of her schedules and statement of financial affairs cured any inconsistent position Clark may have maintained. Third, because the doctrine of judicial estoppel only applies where a party intentionally maintains inconsistent positions, Clark cannot be punished for mistakenly or inadvertently omitting the discrimination claims from her bankruptcy. Finally, Clark will not receive an unfair advantage, and Keystone will not have any unfair detriment imposed on it, if Clark is allowed to pursue her claim in this bankruptcy.

Both parties rely on *Biesek* in support of their position. That case involved a chapter 7 debtor who failed to disclose a claim against his former employer for injuries he sustained on the job prior to filing bankruptcy. *Id.* at 411. Unlike in this case, in *Biesek*, the employer had offered the debtor $62,500 to settle the suit three months before the debtor filed his chapter 7 petition. As noted by the Seventh Circuit, "Failure to reveal this potential recovery could not have been inadvertent. . . ." *Id.* Nine months after Biesek's suit against his employer was dismissed on the basis of judicial estoppel, and while an appeal was pending, the debtor and his trustee entered into a stipulation providing that the first $7,000 of any recovery would go to the creditors, and in exchange the trustee would agree with the debtor's position that the omissions in his schedules were inadvertent. *Id.* at 412. This stipulation was "too little too late," as far as the Seventh Circuit was concerned, as Biesek did not accept an earlier invitation from the trustee to schedule the claim for the benefit of his creditors. "Failure to take that opportunity implies determination that the creditors receive not a penny from any recovery. The 'stipulation' is Biesek's last-ditch effort to save something for himself; it does not demonstrate that he has tried all along to honor his debts." *Id.*

In *Biesek*, the Seventh Circuit Court of Appeals considered judicial estoppel in the context of a bankruptcy proceeding. After noting that debtors are frequently estopped from asserting a claim against another party when they did not list that claim in their bankruptcy schedules, the court discussed the unique considerations applicable to bankruptcy cases: disclosure and creditors' rights. *Id.* at 412–413. However, before even getting to the merits of judicial estoppel, the court considered the posture of the debtor's lawsuit:

Decisions that have relied on judicial estoppel assume that the tort claim belongs to the debtor. Only then is one person on both sides of the same issue. Yet why would Biesek own this chose in action? Pre-bankruptcy claims are part of debtors' estates; this FELA claim therefore belongs to the Trustee, for the benefit of Biesek's creditors. . . . So the threshold issue is not whether to apply an estoppel but whether Biesek is the real party in interest. He appears to be an interloper, trying to prosecute a claim that belongs to his estate in bankruptcy.

*Id.* at 413. Since Biesek did not have standing to pursue a claim that belonged to his bankruptcy estate, the court affirmed the decisions of the district court in dismissing the suit and refusing to reopen it after the stipulation was signed. *Id.* at 414. Standing, not judicial estoppel, was the basis for the Seventh Circuit's decision in *Biesek*.

Other courts in *Biesek's* wake have reached similar results. *See Valdez v. JDR LLC*, No. CV 04–1620–PHX–JAT, 2006 WL 2038456 (D.Ariz. July 20, 2006) (declining to apply judicial estoppel where debtor failed to include cause of action in bankruptcy, especially where there was no showing that omission was intentional, and requiring debtor to inform his bankruptcy trustee to allow creditors to share recovery); *Wood v. Household Fin. Corp.*, 341 B.R. 770 (W.D.Wash.2006) (doctrine of judicial estoppel did not apply because trustee, who had been substituted as the plaintiff in debtor's federal lawsuit, had not taken inconsistent positions; it was the debtor who had failed to list the lawsuit); *Parker v. Wendy's Int'l, Inc.*, 365 F.3d 1268 (11th Cir.2004) (same; debtor has standing problem, not judicial estoppel problem).

In *Cannon–Stokes v. Potter*, 453 F.3d 446 (7th Cir.2006), the Seventh Circuit Court of Appeals revisited the judicial estoppel issue in the bankruptcy context. In that case, a debtor failed to list a Rehabilitation Act claim against her employer, even though she was in the middle of an administrative proceeding. *Id.* at 447. She received a discharge, and then filed her Rehabilitation Act lawsuit. *Id.* The employer sought to preclude her from pursuing that action on judicial estoppel grounds. *Id.* Although beginning with a similar analysis as in *Biesek,* the *Cannon–Stokes* court encountered a major difference: the trustee in this debtor's bankruptcy had actually abandoned her litigation interest, so that the action belonged to her, not her trustee. *Id.* at 448. The court does not clarify exactly how the trustee abandoned the claim, but repeatedly states that the debtor did not schedule the claim, even after her failure to do so was brought to her attention. *See id.* The court determined that the debtor intentionally concealed the asset, and could not now benefit from that concealment. *Id.* In discussing the importance of disclosure and truthfulness in bankruptcy proceedings, the court noted:

> It is impossible to believe that such a sizeable claim—one central to her daily activities at work—could have been overlooked when Cannon–Stokes was filling in the bankruptcy schedules. And if Cannon–Stokes were really making an honest attempt to pay her debts, then as soon as she realized that it *had* been omitted, she would have filed amended schedules and moved to reopen the bankruptcy, so that the creditors could benefit from any recovery. Cannon–Stokes never did that; she wants every penny of the judgment for herself.

*Id.*

Again, our facts are clearly distinguishable from *Cannon–Stokes*. First, the claim actually belongs to Clark's bankruptcy estate, not to Clark herself. The trustee has not abandoned the claim from Clark's bankruptcy estate; rather, he has employed Attorney Benassi to pursue it. When the omission was discovered, Clark immediately reported it to the trustee, who promptly reopened the bankruptcy case to administer the asset. The trustee issued a notice of potential distribution, and the bankruptcy estate obviously stands to benefit from the pursuit of the claim.

Also, the chronology surrounding Clark's claim makes application of judicial estoppel inappropriate when compared to *Cannon–Stokes*. Aside from the fact that Clark reopened her bankruptcy case to include the claim, at the time Clark filed her bankruptcy, she had not yet received any indication from the EEOC that it was going to treat her claim favorably. In fact, Clark did not receive her Determination Letter from the EEOC until over a year after she obtained her discharge. While not excusing the omission from the bankruptcy schedules—which require a debtor to list all claims, even those that are contingent and unliquidated—given the procedural posture of the claim at the time of the petition, Clark must have considered a recovery extremely remote and unlikely. By the time the EEOC issued its Determination Letter over one year after she received her discharge, Keystone itself was in bankruptcy, and Clark's failure to reopen her own bankruptcy to schedule the claim simply does not smack of the same ulterior motivation apparent in *Biesek* and *Cannon–Stokes*.

In *Logan Medical Foundation, Inc. v. Hayflich & Steinberg (In re Logan Medical Foundation, Inc.),* 346 B.R. 184 (Bankr.S.D.W.Va.2006), the debtor failed to list a potential claim against its accountants in the bankruptcy schedules, but then

objected to the accountants' proof of claim, and counterclaimed for money damages. The accountants invoked judicial estoppel for the debtor's inconsistent position, and moved to dismiss the debtor's counterclaim. The court found the debtor lacked the intent to deceive, a required element of judicial estoppel:

> The Defendants have not presented any evidence of an intent on behalf of the Debtor to mislead the court—much less shown how the Debtor stands to reap any advantage by failing to timely disclose its claim against the Defendants. Moreover, the Debtor's confirmed plan calls for a potential 100% dividend to unsecured claims. The payout to unsecured creditors is being funded, in part, from "the resolution of pending disputed Claims." (Document No. 1820 in Case No. 98–21721). In short, the Defendants have not shown any effort by the Debtor to gain an unfair advantage in its bankruptcy case by failing to make a timely disclose [sic] of this litigation against the Defendants. The Defendant's motion to dismiss this case on the basis of judicial estoppel will be denied.

*Id.* at 189.

Similarly here, Clark's creditors (who are few in number with relatively small claims) stand to receive a significant dividend in her reopened bankruptcy case. In the nearly two years that this Claim Objection has been pending, Keystone has presented no evidence that Clark intended to deceive the Bankruptcy Court in the Central District of Illinois.[2] As in *Logan,* there is no showing that Clark would benefit from the nondisclosure of her claim, especially now that the bankruptcy case has been reopened and the trustee will administer any payment on the claim for the benefit of her creditors.

▮▮▮▮ Given Keystone's own status as a bankruptcy debtor, it is somewhat ironic that Keystone argues in favor of applying judicial estoppel "to preserve the integrity of the bankruptcy system," yet seeks to use the doctrine as a sword against Clark, cutting off her creditors' rights to proceeds of what appears to be the only potential asset. In *Valdez, supra,* the district court quoted *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 364 (3d Cir.1996), in which the court stated:

> [J]udicial estoppel is an "extraordinary remedy to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to "secure substantial equity."

(Citations omitted).

Keystone has provided no evidence that Clark intended to mislead the Bankruptcy Court. At the time of her bankruptcy filing, her discrimination charges had been filed, but no Determination Letter was issued until long after her discharge had been granted. By then, Keystone was in its own bankruptcy proceeding. Keystone's November 15, 2004 Claim Objection did absolutely nothing to apprise Clark of any judicial estoppel theory to bar her proof of claim. The hearing on Keystone's Objection to Clark's claim was continuously adjourned by Keystone (presum-

---

**2.** Keystone's 11th hour application to depose Clark's bankruptcy attorney was denied. The Rule 2004 application was filed in July 2006, after the judicial estoppel issue had already been briefed.

ably with Clark's attorney's consent), until November 2005, when Attorney Benassi stated she received just one day's notice that the Claim Objection would be considered by the Court. Within a month after that hearing, Keystone's attorneys apparently learned of Clark's failure to list the contingent, unliquidated and disputed claim in her personal bankruptcy case, and advised Attorney Benassi (who was not Clark's bankruptcy attorney). Clark responded by immediately taking steps to contact the trustee, reopen the case, and schedule the asset for the benefit of her creditors. The trustee is now the real party in interest in this Claim Objection proceeding, with the result that if and when all of the creditors in Clark's bankruptcy case are paid in full with interest, any excess funds recovered will be paid to Clark. 11 U.S.C. § 726(a).

Under these circumstances, the doctrine of judicial estoppel does not apply to bar Nicole Clark's claim. It does not apply to bar the claim as to Clark's trustee, who has taken no inconsistent position in this matter. Neither does it apply as to Clark herself, since Keystone has failed to show how she was benefitted or Keystone harmed by Clark's failure to list the claim on her original schedules. Keystone certainly has not demonstrated that Clark possessed the requisite intent to deceive the court; in fact, the circumstances surrounding this claim shift the equities toward Clark's favor. A separate Order will be entered overruling the Reorganized Debtors' Eleventh Omnibus Objection to Claims with respect to Claim No. 1285. The Reorganized Debtors retain the right to object to the Claim on a basis other than judicial estoppel.