In re Rene R. ORTIZ, Douglas Lynn Lindsey and Betty Jane Lindsey, Valerie Jones, Kathy Bembenek, and Susan Marie Dandridge, Debtors.

Rene R. Ortiz, et al., Plaintiffs

v.

Aurora Health Care, Inc., Defendant.

Kathy Bembenek, et al., Plaintiffs,

v.

Aurora Health Care, Inc., Defendant.

Bankruptcy Nos. 07–22466–svk, 08–27374–svk, 07–25336–svk, 07–30280–svk, 08–23680–svk.
Adversary Nos. 09–2199, 09–2469.

United States Bankruptcy Court, E.D. Wisconsin.

Feb. 3, 2012.

Michael J. Watton, Milwaukee, WI, for Plaintiffs.

Bartholomew F. Reuter, Frank W. Di-Castri, Foley & Lardner LLP, Milwaukee, WI, Claire Ann Resop, Eliza M. Reyes, Von Briesen & Roper, S.C., Madison, WI, for Defendant.

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SUSAN V. KELLEY, Bankruptcy Judge.

This is an important case involving allegations that a healthcare provider violated its patients' privacy rights by filing copies of confidential medical bills in the public

bankruptcy docket. On June 10, 2010, this Court granted summary judgment to the healthcare provider, and a direct appeal to the Seventh Circuit followed. After briefing and argument, all concerned eagerly anticipated the Court of Appeals' decision. Then the Supreme Court handed down *Stern v. Marshall*, — U.S. —, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), limiting the authority of bankruptcy judges to issue final orders in certain State-law-centered proceedings. On December 30, 2011, the Seventh Circuit Court of Appeals dismissed the appeal and remanded the adversary proceedings to this Court, holding that, under Stern, the Court of Appeals lacked appellate jurisdiction because the final judgment was not issued by an Article III judge. *See Ortiz v. Aurora Health Care, Inc.*, 665 F.3d 906 (7th Cir.2011). In *Stern*, writing for the majority in the protracted dispute between now-deceased Vickie Lynn Marshall (a/k/a Anna Nicole Smith) and her now-deceased stepson, Pierce Marshall, Chief Justice Roberts invoked Charles Dickens' *Bleak House.* This Court has Great Expectations that these Proposed Findings and Conclusions will advance this protracted litigation to conclusion.

## I. JURISDICTIONAL BASIS

### A. Proposed Findings of Fact and Conclusions of Law

■ Section 157(b) of Title 28 defines "core proceedings" in which bankruptcy judges may issue final, appealable orders. Under 28 U.S.C. § 157(c)(1), a bankruptcy judge may hear a non-core proceeding that is otherwise related to a bankruptcy case and submit proposed findings of fact and conclusions of law to the district court. The Article III district judge enters the final order or judgment in such a proceed-

ing after considering the bankruptcy court's proposed findings and conclusions and reviewing de novo those matters to which any party has timely and specifically objected. *Id.* Since the Court of Appeals indicated that only an Article III judge could issue a final order in this case, this Court could use the procedures in § 157(c)(1) to issue proposed findings of fact and conclusions of law for consideration and entry of a final order by the District Court.

An impediment to this methodology is the Seventh Circuit's finding that "the debtors' claims qualify as core proceedings and therefore do not fit under § 157(c)(1)," suggesting that entering proposed findings and conclusions may not be appropriate in a core proceeding. *Ortiz*, 665 F.3d at 915. However, the finding was made in the context of whether the direct appeal provision in 28 U.S.C. § 158(d)(2)(A) authorized the Court of Appeals to review a bankruptcy judge's proposed findings of fact and conclusions of law. The statutory scheme clearly does not contemplate a direct appeal of proposed findings and conclusions. *See* 28 U.S.C. § 158(a) (district court granted jurisdiction to hear appeals from *final* bankruptcy court orders); § 158(d) (court of appeals has jurisdiction over appeals from *final* orders). Rather, proposed findings and conclusions are considered by the district court de novo, and the district court enters the final order. The Court of Appeals did not expressly prohibit the entry of proposed findings and conclusions on remand; it merely observed that, like the bankruptcy court in *Stern,* this Court had not followed this procedure in a core proceeding. Additional considerations militate in favor of following the proposed findings procedure of § 157(c)(1).

*Stern* itself strongly suggests that adhering to this procedure is appropriate.

In *Stern*, which involved a counterclaim to a proof of claim (expressly designated a core proceeding in 28 U.S.C. § 157(b)(2)(C)), the Supreme Court indicated that the bankruptcy court should have treated the matter before it as non-core and used the proposed findings procedure for non-core matters. *Stern*, 131 S.Ct. at 2620. The Court described the controversy as a matter of a "division of labor" between the bankruptcy court and district court:

> [T]he current bankruptcy system also requires the district court to review de novo and enter final judgment on any matters that are "related to" the bankruptcy proceedings, § 157(c)(1), and permits the district court to withdraw from the bankruptcy court any referred case, proceeding, or part thereof, § 157(d). Pierce has not argued that the bankruptcy courts "are barred from 'hearing' all counterclaims" or proposing findings of fact and conclusions of law on those matters, but rather that it must be the district court that "finally decide[s]" them ... We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented here is a "narrow" one.

*Id.* By describing the removal of Vickie's counterclaim from core bankruptcy jurisdiction in the context of the proposed findings procedure of § 157(c), the Supreme Court sanctioned the use of that procedure even for core matters.

District courts and bankruptcy courts around the country have relied on and applied this premise. *See, e.g.*, *RES–GA Four LLC v. Avalon Builders of GA LLC*, 2012 WL 13544, at *8–9, 2012 U.S. Dist. LEXIS 485, at *28 (M.D.Ga. Jan. 4, 2012) ("Congress could not have intended to provide bankruptcy judges with the authority to hear non-core proceedings related to a title 11 case and submit proposed findings of fact and conclusions of law, but not extend the same power to core proceedings."); *JustMed, Inc. v. Byce (In re Byce)*, 2011 WL 6210938, at *5, 2011 U.S. Dist. LEXIS 144115, at *14–15 (D.Idaho Dec. 14, 2011) ("[T]he Supreme Court intended for unconstitutional core matters to default to the § 157(c)(1) procedure, rather than to be wholly removed from the bankruptcy court. Consequently, even assuming the bankruptcy court is faced with a [*Stern*]-type matter, the bankruptcy court may enter proposed findings of fact and conclusions of law and submit them to this Court for de novo review."); *Levey v. Hanson's Window & Constr., Inc. (In re Republic Windows & Doors, LLC)*, 460 B.R. 511, 518 (Bankr.N.D.Ill.2011) ("Nothing in [*Stern*] can be read to preclude this Court from submitting proposed findings of fact and conclusions of law to the district court."); *Heller Ehrman LLP v. Arnold & Porter, LLP (In re Heller Ehrman LLP)*, 2011 WL 4542512, at *3, 2011 Bankr.LEXIS 3764, at *9 (Bankr.N.D.Cal. Sept. 28, 2011) ("It is clear from [*Stern*] ... that the bankruptcy court there should have treated the matter before it as non-core and adhered to the proposed findings procedure in Section 157(c)(1) and Fed. R. Bankr.P. 9033."). The one bankruptcy judge who initially determined that he could not submit proposed findings and conclusions in a core proceeding reversed his decision and held that *Stern v. Marshall* does not deprive bankruptcy courts of subject matter jurisdiction. *See Samson v. Western Capital Partners LLC (In re Blixseth)*, 2011 WL 6217416, 2011 Bankr.LEXIS 4887 (Bankr.D.Mont. Dec.

14, 2011).[1] And the United States District Court for the Southern District of New York issued an Amended Standing Order of Reference on January 31, 2012 to provide that the district court can treat any order of the bankruptcy court as proposed findings and conclusions of law in the event the district court concludes that the bankruptcy judge constitutionally could not have entered a final order or judgment. Amended Standing Order of Reference, 12–MISC–00032 (S.D.N.Y. Jan. 31, 2012), *available at* http://www.nysd. uscourts.gov/courtrules.php. The amended standing order recognizes the utility of the procedure for core and non-core proceedings alike.

Permitting a bankruptcy court to submit proposed findings of facts and conclusions of law in these circumstances also comports with Supreme Court precedent that a court should refrain from invalidating more of a statute than is necessary. *See, e.g., Ayotte v. Planned Parenthood of Northern New England,* 546 U.S. 320, 328–29, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006); *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). If the bankruptcy court could not issue proposed findings to the district court in a matter that Congress has unconstitutionally designated as a core proceeding, additional provisions of the statutory scheme would become meaningless. More than a "division of labor" would be implicated, and Chief Justice Roberts' narrow holding would expand exponentially. This Court concludes that, notwithstanding the Seventh Circuit's comment in its remand

decision, it is procedurally appropriate to submit the following proposed findings of fact and conclusions of law to the District Court for de novo review.

**B. Motion to Withdraw the Reference**

■ Alternatively, if the District Court is disinclined to follow this procedure, the Court respectfully requests that the District Court withdraw the reference of these cases pursuant to 28 U.S.C. § 157(d). Section 157(d) provides: "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." If the District Court reads the Court of Appeals' decision to prohibit the issuance of proposed findings of fact and conclusions of law in a core proceeding, the District Court could appropriately withdraw the reference of this case for "cause shown." A bankruptcy court is a proper "party" to make a request under section 157(d). *See, e.g., Walton v. Ag Credit, ACA (In re Walton),* 158 B.R. 939 (Bankr. N.D.Ohio 1993); *In re Moody,* 64 B.R. 594 (Bankr.S.D.Tex.1986) (recommending that district court withdraw reference); *In re Hartley,* 55 B.R. 781, 785 (Bankr.N.D.Ohio 1985) ("The code states the District Court will consider withdrawal 'on timely motion of a party.' This Court does not believe that language excludes the Bankruptcy Court from making the motion . . . .").

"Cause" exists to withdraw the reference of this case: The Seventh Circuit remanded the case because an Article III judge has not entered a final judgment.

---

1. Judge Wedoff determined in *Gecker v. Flynn (In re Emerald Casino, Inc.),* 459 B.R. 298, 300 (Bankr.N.D.Ill.2011), that a core proceeding also would have components to fall within the provisions of § 157(c): "[T]he trustee's complaint would at least be within the 'relat-

ed-to' jurisdiction of the bankruptcy court and, as set forth in 28 U.S.C. § 157(c)(1), a bankruptcy judge may propose findings and conclusions to the district court for that court's entry of judgment pursuant to such jurisdiction."

This case involves allegations that a proof of claim, a unique creature of federal bankruptcy law, violated a State statute. If the District Court is unwilling to accept the proposed findings of fact and conclusions of law, this Court respectfully moves the District Court to withdraw the reference of the case so that a final judgment may be entered.

## II. PROPOSED FINDINGS OF FACT

### A. Background and Procedural Facts

1. On June 23, 2009, Rene Ortiz, Douglas Lindsey and Valerie Jones (the "Ortiz Debtors") filed a Complaint in this Court against Aurora Health Care, Inc. ("Aurora"). The Complaint alleged that Aurora attached invoices containing account numbers and confidential medical records to its proofs of claim in the Ortiz Debtors' Chapter 13 bankruptcy cases.

2. On November 9, 2009, two other debtors, Kathy Bembenek and Susan Dandridge (the "Bembenek Debtors"), filed actions in the Circuit Court for Milwaukee County, alleging that Aurora attached confidential medical records to proofs of claim in their bankruptcies.

3. On December 4, 2009, Aurora removed the Bembenek Debtors' actions to this Court, and the Bembenek Debtors moved to remand the proceedings back to the State court. The Court denied the Motions for Remand, and on February 22, 2010, consolidated the Bembenek Debtors' actions into one adversary proceeding.

4. On October 26, 2010, the Bembenek Debtors' adversary proceeding and the Ortiz Debtors' adversary proceeding were consolidated for purposes of the appeal to the Seventh Circuit, and they will remain consolidated for purposes of issuing these Proposed Findings and Conclusions. (For convenience, the Ortiz Debtors and Bembenek Debtors will collectively be referred to as the "Debtors.")

5. On July 23, 2009, Aurora filed a Motion to Dismiss the Ortiz Debtors' Complaint. After briefing, including an amicus brief from the Wisconsin Hospital Association, on October 6, 2009, the Court dismissed Count I of the Complaint alleging that Aurora violated Bankruptcy Rule 9037.

6. The Court did not dismiss Count II, but requested additional briefs on the limited issue of whether the medical records attached to Aurora's proofs of claim exceeded "the extent needed" for billing, collection and payment of the claims as described in Wis. Stat. § 146.82.

7. After additional briefing, including an amicus brief filed by the Wisconsin Medical Society, on November 10, 2009, the Court held a hearing and denied the Motion to Dismiss Count II, finding under the test enunciated in the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), that the Complaint set forth a "plausible claim" that Aurora's proofs of claim violated Wis. Stat. § 146.82.

8. On July 31, 2009, the Ortiz Debtors filed a Motion for Class Certification. The parties briefed this Motion, and the Court granted it on March 9, 2010.

9. On December 11, 2009, the Ortiz Debtors filed a Motion for Abstention, arguing that because the Debtors' only remaining claim against Aurora is grounded in unsettled State law, this Court should abstain to allow the issue to be determined in a Wisconsin court.

10. Aurora objected to the Motion for Abstention, and, on December 30, 2009,

filed a Motion to Withdraw the Reference of both adversary proceedings to the District Court.

11. On January 5, 2010, this Court denied the Ortiz Debtors' Motion for Abstention,[2] concluding that: (1) mandatory abstention under 28 U.S.C. § 1334(c)(2) was inappropriate since no state court proceeding was pending; and (2) permissive abstention under § 1334(c)(1) similarly was not justified. The Court's decision stated: "In summary, this Court should not abstain because this adversary proceeding is grounded in a unique creature of bankruptcy law—the proof of claim—and Aurora's defense raises the interpretation of this Court's own confirmation orders. It would not be appropriate to shirk this Court's jurisdiction in favor of a State court, likely to be less familiar with the bankruptcy law issues that continue to permeate this proceeding." (Memorandum Decision and Order Denying Plaintiffs' Motion to Abstain, Ortiz Docket No. 81).

12. On March 19, 2010, the District Court denied Aurora's request to withdraw the reference, finding that this action involves a core proceeding, and "the bankruptcy court is well-suited to address the question of whether bankruptcy law required Aurora to disclose the material to which plaintiffs object because it has particular expertise in bankruptcy law." (Order, Ortiz Docket No. 110; Bembenek Docket No. 30).

13. The District Court reserved the possibility that the reference could be withdrawn if the case proceeded to a jury trial. (Id.).

14. On March 10, 2010, Aurora filed a Motion for Summary Judgment seeking dismissal of the Complaint on three independent grounds: judicial estoppel, the absolute litigation privilege and the Debtors' lack of actual damages.

## B. Facts Concerning Judicial Estoppel

15. At the time the Debtors filed bankruptcy, Aurora had not filed its proofs of claim.

16. The Debtors did not list their claims against Aurora in their original bankruptcy schedules, and they never amended their schedules to disclose these claims.

17. The Debtors advised their Chapter 13 Trustees of their claims against Aurora. On May 25, 2010, the Bembenek Debtors filed Affidavits of the Chapter 13 Trustees stating: "Before the filing of both cases, the counsel for all Plaintiffs . . . contacted my office and informed me that he was going to file cases in both Federal and State Court." (Affidavits, Bembenek Docket No. 46).

18. The Ortiz Debtors filed their Complaint against Aurora in this Court, the same bankruptcy court where their cases were pending. Aurora removed the Bembenek Debtors' adversary proceeding to this Court.

19. Although the Debtors did not amend their bankruptcy schedules to disclose their claims against Aurora, the claims were disclosed to the Trustees and this Court by other means.

## C. Facts Concerning Litigation Privilege

20. Aurora's proof of claim in the case of Douglas Lindsey states on its face: "Attach redacted copies of any documents that support the claim. . . . You may also attach

2. Aurora had not sought a stay under Fed. R.    Bankr.P. 5001(c).

a summary." (Aurora's Proposed Findings of Fact, Group Exhibit K, Ortiz Docket No. 106, filed under seal).

21. Despite this instruction, Aurora attached a 15–page medical bill, detailing treatments, tests, medications and diagnosis for Mr. and Mrs. Lindsey. (*Id.*).

22. The same instruction appears on the proof of claim form Aurora filed in the case of Susan Dandridge. (*Id.*).

23. Along with the proof of claim in Susan Dandridge's case, Aurora filed an 8–page bill detailing medical tests and treatments. (*Id.*).

24. Aurora appended similar attachments to the proofs of claim it filed in the other Debtors' bankruptcy cases. (*Id.*).

**D. Facts Concerning Actual Damages**

25. Aurora deposed Rene Ortiz, Douglas Lindsey and Valerie Jones.

26. In response to Aurora's questions about damages, none of the Ortiz Debtors identified any known damages as a result of Aurora's proof of claim.

27. In response to the question, "Sitting here today, do you have any information that that release of information has damaged you?" Rene Ortiz replied, "No." (*Id.*, Exhibit H).

28. Valerie Jones admitted that she had not lost a job or any wages and did not incur additional medical treatment because of the filing of the proof of claim. When asked whether it was correct that she had not incurred any expense as a result of the proof of claim, Ms. Jones answered, "Correct." (*Id.* Exhibit I).

29. Aurora's counsel asked Douglas Lindsey what harm he suffered as a result of the proof of claim. Mr. Lindsey stated,

"I'm unaware of any harm that has incurred (sic).... Yes, I'm unaware. I'm not saying it hasn't happened. I'm just saying I'm unaware." (*Id.*, Exhibit J).

30. The deposition testimony was the sole evidence of damages that the Ortiz Debtors suffered as a result of the filing of Aurora's proofs of claim.

31. The Bembenek Debtors were not deposed, and did not file any affidavits or other evidence that they were damaged by Aurora's proofs of claim.

32. Aurora argued that the depositions showed that the Debtors were unable to prove actual damages—a required element of a claim under Wis. Stat. § 146.82.

33. In their Response to the Motion for Summary Judgment, the Debtors conceded that they could show no actual damages, but argued for an extension of *Jacque v. Steenberg Homes, Inc.*, 209 Wis.2d 605, 563 N.W.2d 154 (1997). They asserted: "Because a legal right is involved, the actual damage is the loss of the right to patient health care record confidentiality, which may support an award for exemplary damages." (Response to Motion for Summary Judgment, Ortiz Docket No. 115).

34. At the hearing on Aurora's Motion for Summary Judgment, Aurora contended that there was no dispute about a critical evidentiary fact—the Debtors had no actual damages. (Transcript page 44, Ortiz Docket No. 168).

35. The Debtors' counsel responded that in pleadings filed in connection with the class certification dispute, the Debtors had shown a genuine dispute of fact as to damages. Counsel contended that the Debtors repeatedly demonstrated a dispute as to damages, and that the Debtors

stated in their depositions that "there are damages as yet unknown." (*Id.* at 45).

36. At the Court's request, the day after the hearing, the Debtors' counsel filed a Supplement to show the evidentiary facts in the record that allegedly created a factual dispute with respect to damages. (Support/Supplement, Ortiz Docket No. 121).

37. In the Supplement, the Debtors cited virtually the same deposition testimony that Aurora attached to the Motion for Summary Judgment. The Debtors' Supplement referred to three additional pages of the Transcripts than had been cited by Aurora. In those additional pages, Douglas Lindsey testified that Aurora violated the "contract" between himself and his doctor by releasing private information, but did not identify any damages he suffered as a result. (Separate Statement of Facts in Support of Reply in Support of Class Certification, Exhibit D, Ortiz Docket No. 101, filed under seal). And Valerie Jones testified about damages: "I couldn't point to any at this particular time but I don't know about anything in the future." (*Id.*).

38. The testimony cited in the Supplement confirmed that the Ortiz Debtors were unaware of any actual damages as a result of Aurora's proofs of claim.

39. The Debtors did not seek leave to file additional affidavits concerning damages, but rather maintained their position that actual damages are not a prerequisite to maintaining a private cause of action under Wis. Stat. § 146.82.

40. After the Court issued a Decision on the Motion for Summary Judgment, the Debtors filed a Motion to Decertify the Class and for Reconsideration.

41. Noting that both parties agreed that the class should be decertified, the Court granted the Motion to Decertify, but denied the Motion to Reconsider.

42. A direct appeal to the Court of Appeals followed.

43. On December 30, 2011, the Court of Appeals dismissed the appeal, finding that, under *Stern v. Marshall,* —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), this Court did not have authority to enter a final order on the Complaint.

## III. PROPOSED CONCLUSIONS OF LAW

The Court having considered the briefs, argument of counsel and the record in this case now proposes the following conclusions of law:

### A. Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, and is appropriately granted when the moving party can establish that there is no genuine issue of material fact and that the party is entitled to judgment, as a matter of law. FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment should be granted when a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C.,* 277 F.3d 882, 893 (7th Cir.2001). "[C]onclusory statements, not grounded in specific

facts, are not sufficient to avoid summary judgment." *Lucas v. Chicago Transit Auth.,* 367 F.3d 714, 726 (7th Cir.2004); *see also* FED.R.CIV.P. 56(e).

## B. Discussion

Aurora claims to be entitled to Summary Judgment based on three independent theories: (1) judicial estoppel; (2) the absolute litigation privilege; and (3) lack of proof of actual damages. These arguments will be addressed in order.

### 1. Judicial Estoppel

■ Judicial estoppel "is an equitable concept providing that a party who prevails on one ground in a lawsuit may not in another lawsuit repudiate that ground." *United States v. Christian,* 342 F.3d 744, 747 (7th Cir.2003). This doctrine's purpose is " 'to protect the integrity of the judicial process' by preventing litigants from 'deliberately changing positions according to the exigencies of the moment.' " *Matthews v. Potter,* 316 Fed.Appx. 518, 522 (7th Cir.2009) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749–50, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001)). Judicial estoppel may apply when:

> (1) the later position is clearly inconsistent with the earlier position; (2) the facts at issue are the same in both cases; (3) the party to be estopped convinced the first court to adopt its position; and (4) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Christian,* 342 F.3d at 747. "Judicial estoppel is strong medicine, however, and it should not be used where it would work an injustice.... The rule looks toward cold manipulation and not an unthinking or confused blunder." *In re FV Steel & Wire Co.,* 349 B.R. 181, 185 (Bankr.E.D.Wis. 2006).

The doctrine of judicial estoppel is normally invoked to prevent a party from asserting positions in successive judicial proceedings that are so "clearly inconsistent" that accepting the latter position would create the perception that at least one of the courts was deceived. *Matthews,* 316 Fed.Appx. at 522. The doctrine frequently is invoked in connection with bankruptcy proceedings when a debtor has failed to disclose a claim, but then pursues the claim after the bankruptcy concludes. *See, e.g., Cannon–Stokes v. Potter,* 453 F.3d 446 (7th Cir.2006) (where debtor's schedules omitted any mention of claim, debtor was judicially estopped from pursuing claim post-discharge). However, "[e]stoppel is an equitable concept, and its application is therefore within the court's sound discretion.... It should not be used where it would work an injustice, such as where the former position was the product of inadvertence or mistake ... or where there is only an appearance of inconsistency between the two positions but both may be reconciled." *In re Cassidy,* 892 F.2d 637, 642 (7th Cir.1990).

Aurora alleges that judicial estoppel prohibits the Debtors from pursuing their claims because the Debtors failed to mention their claims against Aurora in their Schedules or Plans and now seek to press claims that they previously omitted. However, the claims here arose *after* the Debtors filed their bankruptcy petitions, when Aurora filed proofs of claim containing private medical information. Unlike the debtor in *Cannon–Stokes,* these Debtors could not possibly have known about their claims against Aurora when preparing their Schedules. Aurora admitted as much at oral argument, but contends that judicial estoppel applies nonetheless because the Debtors have an ongoing duty to notify the Court and the Trustee of post-

petition claims. Failing to amend their Schedules after learning of the claims, Aurora argues, is akin to concealing assets, and the Debtors should be estopped from pursuing their claims.

To support its argument, Aurora primarily relies upon *Hamilton v. State Farm Fire & Casualty Company*, 270 F.3d 778 (9th Cir.2001), *Clarke v. UPS, Inc.*, 421 B.R. 436 (W.D.Tenn.2010), and *Young v. Town of Greenwood*, 2009 WL 1924192, 2009 U.S. Dist. LEXIS 54834 (W.D.La. June 26, 2009). These cases easily are distinguishable on the facts, as none involves a cause of action arising from the defendant's actions in the main bankruptcy case where the subsequent Complaint was brought before the same bankruptcy court.

Aurora further posits that the bankruptcy estate can *only* be notified of a potential claim by amending the Bankruptcy Schedules. While the Debtors arguably bore an ongoing duty to disclose the existence of their claims, *see* 11 U.S.C. §§ 521(1), 541(a)(7), an amendment to the Bankruptcy Schedules is only one of a variety of methods available to accomplish the disclosure. *See Matthews* 316 Fed.Appx. at 522 (citing *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898 & n. 1 (6th Cir.2004) (judicial estoppel inapplicable where debtor omitted potential claim against defendant from Chapter 7 schedules, but orally disclosed it to the trustee during meeting of creditors)); *InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir.2003) (judicial estoppel not appropriate where corporate plaintiff amended its complaint to revise factual allegations); *see also Jaeger v. Clear Wing Prods.*, 465 F.Supp.2d 879 (S.D.Ill.2006) (oral disclosure of claim to trustee rendered judicial estoppel inapplicable; summary judgment not warranted).

*Matthews v. Potter* is of particular relevance, not only because it supplies very recent Seventh Circuit authority, but also because the facts are fairly similar to this case. In *Matthews*, a Chapter 7 debtor filed a cause of action that originally was not listed in her Bankruptcy Schedules, but she advised the trustee about the claim at the meeting of creditors. The Court of Appeals found the debtor's oral disclosure of the cause of action to the trustee sufficient to comply with the Code, and enough to prevent the application of judicial estoppel:

> Matthews, in whose favor we must draw all reasonable inferences, states in her affidavit that she informed the trustee about her pending administrative complaints at the meeting of creditors for her Chapter 7 bankruptcy.... The Bankruptcy Code contemplates the possibility that a debtor may later discover and inform the trustee of additional assets not already listed on the schedules, given the trustee's obligations to investigate the debtor's financial affairs, and to examine the debtor at the meeting of creditors.... That is precisely what happened here, at least as far as the record shows, and the inference we draw is that following Matthews's oral disclosure the trustee determined that her discrimination claims were not sufficiently valuable to warrant pursuing them on behalf of the creditors.

*Matthews*, 316 Fed.Appx. at 522–23 (internal citations omitted).

The Debtors' cases are Chapter 13 cases, somewhat complicating the matter. *See Kemp v. Segue Distrib. (In re Kemp)*, 2011 WL 3664497, 2011 Bankr.LEXIS 3197 (Bankr.W.D.La. Aug. 19, 2011) (Chapter 13 estate includes post-petition assets, and Chapter 13 debtors have continuing duty to disclose post-petition causes of action). However, in this case,

an Affidavit shows that the Debtors advised their Trustees of their claims against Aurora, and the Ortiz Debtors filed their Complaint in the Bankruptcy Court where the claims against Aurora arose. Unlike the cases Aurora cited, the Debtors did not play "hide the ball" in an attempt to keep this cause of action from the Trustee or their creditors. *See also Kemp,* at *6, 2011 Bankr.LEXIS 3197, at *19 (cases where courts have found disclosures inadequate often involve deceptive conduct by debtor hindering trustee's efforts to administer the claim). The Debtors' failure to amend the Schedules was not an effort to mislead or dupe the Court, and it is questionable that judicial estoppel can even apply when the "undisclosed lawsuit" is filed in the very same Bankruptcy Court where the Schedules were filed. Under Aurora's theory, before a debtor could file a counterclaim to a proof of claim or a debtor in possession could file a Bankruptcy Court adversary proceeding to avoid a post-petition transfer to a creditor, the debtor would be required to amend the Schedules to be sure that due notice was given of the claim and avoid the effect of judicial estoppel. Such machinations are not required and would be an unwarranted extension of this equitable doctrine.

Therefore, acknowledging and applying the inference this Court must draw in favor of the Debtors, adequate notification was given to the bankruptcy estate when the Debtors made oral disclosures to the Trustees of their claims against Aurora, and also by the filing of the adversary proceeding in this Court. Summary judgment on the basis of judicial estoppel should be denied.

### 2. Absolute Litigation Privilege

██ Aurora's second argument is that because the Complaint is premised entirely on statements contained in court pleadings, and that, in Wisconsin, statements in pleadings are absolutely privileged, the Complaint should be dismissed as a matter of law. As explained by the Wisconsin Supreme Court in *Bergman v. Hupy,*

> [P]arties and counsel are immune from liability for relevant statements in pleadings and otherwise in the course of judicial proceedings. This absolute privilege as to statements made during judicial proceedings has been summarized to be: Parties to judicial proceedings are absolutely exempt from responsibility for libel on the ground of privilege for any defamatory matter published in the course of judicial proceedings, subject to the possible qualification that such defamatory matter is pertinent or relevant to the case.

64 Wis.2d 747, 750, 221 N.W.2d 898 (1974) (internal quotations and citations omitted).

The Seventh Circuit recognized the principles set forth in *Bergman* in *Niedert v. Rieger,* 200 F.3d 522, 525 (7th Cir.1999), where it also found "[t]his immunity extends to statements made in pleadings, in affidavits or in open court—again, so long as the statements are relevant to the litigation." Aurora relies on *Snow v. Koeppl,* 159 Wis.2d 77, 464 N.W.2d 215 (Ct.App. 1990), but that case is distinguishable. Aurora has not cited a case in which an alleged violation of Wis. Stat. § 146.82 was dismissed based on the litigation privilege. This Court recommends that the provisions of the statute should supersede the litigation privilege in the present circumstances.

In *Snow,* the family court ordered a family to undergo psychological evaluation in connection with the ex-husband's request for visitation rights with minor chil-

dren. The court contacted a psychologist to perform the evaluation. The psychologist learned that the ex-wife had previous counseling sessions at the same clinic where the psychologist worked and used some of the information from those sessions in the report. The ex-wife sued the psychologist, her insurance company and the clinic for breach of confidentiality and invasion of privacy. The trial court dismissed the complaint on the grounds that the psychologist was immune from liability as a quasi-judicial officer. The Court of Appeals affirmed, citing the policy reasons for the litigation privilege: if parties are "shadowed by the fear that by some mistake as to facts or some excess of zeal, or by some error, they may be subjected to harassing litigation, they may well feel that justice is too dearly brought and abandon its pursuit. . . . The paramount public interest here intervenes and overrides considerations of mere private right between the parties." *Id.* at 216 (internal quotations omitted). Specifically, the Court of Appeals held: "Here, a directive to perform a psychological evaluation should, in keeping with the sound reasons for immunity, be liberally construed to protect the court official from liability for the examination and use of reports of earlier psychological counseling or therapy."

Significantly, the *Snow* court did not address whether the psychologist's incorporation of the prior counseling records into her report violated Wis. Stat. § 146.82, and consequently did not consider whether the Statute could have trumped the litigation privilege.[3] Courts in other states have squarely faced this issue. In *Wynn v. Earin,* 163 Wash.2d 361, 181 P.3d 806 (Wash.2008), the Supreme Court of Washington held that the state's Health Care Information Act prevailed over the common law litigation privilege. In *Wynn,* a psychologist gave information to a guardian ad litem without a release in hand as required by the statute. The psychologist claimed that the litigation privilege (also called witness immunity) protected her from liability under the statute. The Court of Appeals denied this claim, and the Washington Supreme Court affirmed. Recognizing the same policy reasons behind the litigation privilege as the Wisconsin Court of Appeals described in *Snow,* the Supreme Court of Washington concluded that the policy reasons behind the medical privacy act were stronger:

> As the Court of Appeals recognized, the public policy justification for applying the witness immunity rule is outweighed by the interest in protecting confidential disclosures made during medical treatment. Consultations with confidential advisors should not require a warning that anything disclosed will be available to potential future litigation adversaries and may be used against the client in court.

*Id.* at 373, 181 P.3d 806 (internal quotations and citations omitted).[4]

Aurora argues that the legislature is presumed to know the common law in the

---

3. Apparently, the psychologist who had been contacted by the family court to perform the psychological evaluation did not argue that her report was protected by the exception to § 146.82(4), which provides a defense for health care records disclosed "under a lawful order of a court of record."

4. None of the cases cited by Aurora that extended the litigation privilege to a bankruptcy proof of claim dealt with a statute that clashed with the common law as § 146.82 does here. *See Heavrin v. Nelson,* 384 F.3d 199 (6th Cir.2004) (fraudulent statements made in proof of claim); *Gierbolini Rosa v. Banco Popular de P.R.,* 930 F.Supp. 712 (D.P.R.1996) (addressing proof of claim and

area in which it is legislating, and that this Court should not construe Wis. Stat. § 146.82 in derogation of the common law in the absence of express legislative intent to change the law. The same argument was made in *Wynn.* That court determined that the statute's provisions governing release of medical records during or in preparation for judicial proceedings under certain circumstances showed that the statute applies in judicial proceedings, and that the damages measure demonstrated legislative intent to allow a cause of action notwithstanding the witness immunity rule. Similarly, Wis. Stat. § 146.82 clearly applies in judicial proceedings. For example, § 146.82(1) carves out an exception to the confidentiality rules for "testimony authorized under § 905.04(4)(h)," suggesting that testimony in other circumstances is subject to the statute. Several exceptions to the statute cover judicial or administrative proceedings. *See, e.g.,* Wis. Stat. § 146.82(4), (9), 18(m). And, Wis. Stat. § 146.84 provides damages for violations of § 146.82, implying that the Wisconsin legislature, like its counterpart in Washington, intended to allow a cause of action for violating the statute, notwithstanding the litigation privilege.

Other courts have held that medical privacy statutes supersede the common law litigation privilege. The *Wynn* court found support for its conclusion in *Renzi v. Morrison,* 249 Ill.App.3d 5, 188 Ill.Dec. 224, 618 N.E.2d 794 (1993). In *Renzi,* a psychiatrist who had treated and counseled a mother on her marriage volunteered to testify in favor of the father at a custody proceeding. The mother's objection to the testimony was overruled, and the psychiatrist revealed communications, testified to results of psychological tests,

and offered her opinion of the mother's emotional health. After the trial judge found this information " 'tipped the balance of the scale' " and granted custody to the father, the mother sued the psychiatrist, who claimed common law witness immunity. The *Renzi* court determined that the confidentiality provisions of Illinois' Mental Health and Developmental Disabilities Confidentiality Act, 740 Ill. Comp. Stat. 110/1–17 (2006), prevailed over the common law witness immunity rule. Rejecting the argument that the legislature had to specifically abolish the witness immunity rule, the court reasoned that the statute showed the legislature intended to modify the common law rule because it provided for a court determination of admissibility of confidential information and provided that any person aggrieved by a violation of the act could bring an action for damages.

In determining that the litigation privilege does not protect violators of medical confidentiality statutes, the Illinois courts recognize that any common law right to witness immunity "must give way" to the statute: "The statute clearly indicates the legislature intended to modify absolute common law witness immunity in order to provide a remedy of damages against persons who violate the act." *Renzi,* 249 Ill. App.3d at 8, 188 Ill.Dec. 224, 618 N.E.2d 794; *see also Mandziara v. Canulli,* 299 Ill.App.3d 593, 598, 233 Ill.Dec. 484, 701 N.E.2d 127 (1998) (litigation privilege does not provide defense for violation of statute that is carefully drawn to maintain the confidentiality of mental health records).

Another statute that has been held to abrogate the common law litigation privilege is the Fair Debt Collection Practices Act (FDCPA). In *Heintz v. Jenkins,* the

burden switching effect under 32 L.P.R.A. § 3144).

Supreme Court considered whether the FDCPA applies to a lawyer who "regularly," through litigation, tries to collect consumer debts. 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995). Although the Court did not address common law or any other form of immunity, it thoroughly examined whether Congress intended to apply the FDCPA to lawyers' litigation activities. A 1977 version of the statute exempted from its reach "any attorney-at-law collecting a debt as an attorney on behalf of and in the name of a client." *Id.* at 294, 115 S.Ct. 1489. However, in 1986 Congress repealed this exemption in its entirety "without creating a narrower, litigation-related, exemption to fill the void." *Id.* at 294–95, 115 S.Ct. 1489. The Supreme Court ultimately concluded that, as amended, the FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Id.* at 299, 115 S.Ct. 1489. The Court noted that "alternative language designed to keep litigation activities outside the Act's scope" was proposed but not enacted. *Id.* at 298, 115 S.Ct. 1489. Numerous courts since then have concluded that in actions alleging violations of the FDCPA, "any litigation immunity doctrine is trumped by the Court's holding in *Heintz*." *Barany–Snyder v. Weiner,* 2007 WL 210411, at *9, 2007 U.S. Dist. LEXIS 5137, at *33 (N.D.Ohio Jan. 24, 2007), *aff'd,* 539 F.3d 327 (6th Cir.2008).

By providing a remedy for the violation of the statute protecting patient health care records and contemplating application of the statute in judicial proceedings, the Wisconsin legislature must have intended that § 146.82 trumps the absolute litigation privilege in the same way that the FDCPA, Washington and Illinois statutes do. Indeed, in *Kensington Dev. Corp. v. Israel,* 142 Wis.2d 894, 419 N.W.2d 241 (1988), the Wisconsin Supreme Court recognized that a statute superseded the litigation privilege in a similar context. In *Kensington,* the Supreme Court found that because the statute at issue essentially would be rendered void by application of the litigation privilege, it could not be applied, stating:

> The absolute protection of pleadings was a judicially created doctrine. However, with the enactment of § 706.13, Stats., the legislature has, in effect, modified this doctrine as it relates to the filing of a lis pendens and rendered it a conditional privilege. If the absolute privilege rule is applied, the slander of title statute, § 706.13, Stats., would be nullified because it would be virtually impossible to assert a claim if all communications in judicial proceedings relating to property were absolutely privileged. We hold, as did the court of appeals, that when a lawsuit is commenced pursuant to § 706.13, the absolute privilege rule does not apply.

*Kensington,* 419 N.W.2d at 244. Similarly, in this case, application of the litigation privilege would frustrate the purpose and function of the health records confidentiality statute. The Debtors have asserted that medical records attached to Aurora's proofs of claim violated § 146.82, and to blanket those records with the litigation privilege would eviscerate the express language of the statute that medical records may be disclosed *only* to "the extent that the records are needed for billing, collection or payment of claims." Wis. Stat. § 146.82(3).

■ The limitation in the statute provides another "defense" to the litigation privilege. Even if the litigation privilege applies, it is applicable only to the extent the documents "bear a proper relationship

to the issues." *See Bergman*, 221 N.W.2d at 900. As the Wisconsin Supreme Court explained, "This does not mean, of course, that parties or their counsel can use judicial proceedings as a shield to recklessly and wantonly besmirch the character of third parties or opposing parties by oral or written statements having no relation to the issues involved." *Bussewitz v. Wis. Teachers' Ass'n*, 188 Wis. 121, 124, 205 N.W. 808, 812 (1925) (general rule that parties are not, in all cases, absolutely exempted from liability; rather, must be "pertinent and relevant" to the issues to qualify); *see also Rady v. Lutz*, 150 Wis.2d 643, 444 N.W.2d 58 (Ct.App.1989) (statements that are plainly irrelevant and impertinent and voluntarily made not privileged).

In this case, Aurora has not shown that the Debtors' medical conditions are relevant to the amount due or balance owed, as stated on Aurora's proofs of claim. The applicable proof of claim form suggests that attachments to proofs of claim be redacted, refuting Aurora's suggestion that the entire invoice, including a description of the medical treatment, was required to be attached to the claim. *See* Fed. R. Bankr.P. Official Form 10 (2005–2007).[5] If the patient healthcare records could have and should have been redacted or summarized, and if the health care confidentiality statute only permits the disclosure of those records "to the extent the records are

needed" for collection, the pertinent and relevant standards necessary for the litigation privilege were not satisfied. Accordingly, this Court recommends that either the litigation privilege does not apply to protect records disclosed in violation of Wis. Stat. § 146.82 because the statute trumps the common law privilege, or the records in this case were not relevant or pertinent to the matter at issue (the amount of money due to Aurora), and therefore Aurora's Motion based on the litigation privilege should not be granted.

### 3. Actual Damages

Aurora strenuously argues that the Debtors have not provided evidence of damages, and because evidence of actual damages is an essential element of their cause of action, the Debtors' claims cannot survive a motion for summary judgment. The Debtors respond that actual damages are not required, and that the Debtors can receive nominal damages and recover under the statute. Additionally, the Bembenek Debtors argue that Aurora did not carry its burden of showing that they did not suffer actual damages.

### a. Actual Damages are a Required Element of the Claim

■ Initially, the Court agrees with Aurora that § 146.84 requires proof of actual damages. The relevant provisions state:

(b) Any person, including the state or any political subdivision of the state,

---

5. Aurora incorrectly argues that the Bankruptcy Rules in effect when the claims were filed required the medical records be included with the billing invoices. Although the instructions on the proof of claim form now are more specific with respect to confidential health care information, the instructions when these claims were filed suggested that the attachments should be "redacted" and that a summary would be appropriate. The instructions for Official Bankruptcy Form 10 (2005–2007) states:

**Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary.

who violates s. 146.82 or 146.83 in a manner that is knowing and willful shall be liable to any person injured as a result of the violation for *actual* damages to that person, exemplary damages of not more than $25,000 and costs and reasonable actual attorney fees.

(bm) Any person, including the state or any political subdivision of the state, who negligently violates s. 146.82 or 146.83 shall be liable to any person injured as a result of the violation for *actual* damages to that person, exemplary damages of not more than $1,000 and costs and reasonable actual attorney fees.

Wis. Stat. § 146.84 (2011) (emphasis supplied).

The legislative history confirms that a claim under § 146.84 requires proof of actual damages to prevent frivolous or nuisance litigation. The Wisconsin legislature amended the health care privacy statutes in 1991 to add a private cause of action for individuals who were injured by an unlawful disclosure of private health care records. Section 146.84 was added to the statutes by virtue of 1991 Wis. Act 39, § 2667n. The original version included the following language:

> It is not a prerequisite to an action under this paragraph by the person whose records are released in violation of s. 146.82 ... that he or she suffer or be threatened with actual damages.

But Governor Thompson struck this language using his line item veto power. The Governor cited his concern that health care providers would be exposed to "the possibility of frivolous or nuisance litigation." *See Hannigan v. Sundby Pharm., Inc.,* 224 Wis.2d 910, 924, 593 N.W.2d 52, 58 (Ct.App.1999) (in turn citing Governor

Tommy Thompson veto message on 1991 A.B. 91 (1991 Wis. Act 39) at 32–33; *see also Landwehr v. Landwehr,* 2006 WI 64, ¶ 25, 291 Wis.2d 49, 715 N.W.2d 180 ("governor's veto message is part of the legislative history and is evidence of legislative intent"); *Juneau County v. Courthouse Employees, Local 1312,* 221 Wis.2d 630, 649, 585 N.W.2d 587, 594 (1998) (same).

Despite the unambiguous statutory language and contrary legislative history, the Debtors argue that they are entitled to press their claims for nominal and punitive damages under the rule announced in *Jacque v. Steenberg Homes, Inc.,* 209 Wis.2d 605, 563 N.W.2d 154 (1997). In *Jacque,* a mobile home dealer cut a path across a snow covered field and dragged a mobile home across it for installation at a neighboring property despite the fact that the owners of the field had repeatedly and adamantly refused permission for the mobile home dealer to cross their property. The jury awarded the landowners $1 in damages and $100,000 in punitive damages, but the Circuit Court and Court of Appeals struck down the punitive damages under established Wisconsin precedent that an award of nominal damages cannot support a punitive damages award. As stated in *Hanson v. Valdivia,*

> [T]he rule is well established in this state that a claim for punitive damages alone is not sufficient to support a cause of action. There must be a showing of some actual injury which would justify an award of actual or compensatory damages before punitive damages may be awarded.

51 Wis.2d 466, 474, 187 N.W.2d 151, 155 (1971). Calling the trespass "egregious," "deceitful," "devious" and "reprehensible," the Wisconsin Supreme Court reversed and reinstated the punitive damages

award, carving out a narrow exception to the damages rule for cases involving intentional trespass. *Jacque,* 209 Wis.2d at 628, 563 N.W.2d 154. In addition to the exception for trespass, Wisconsin recognizes two other intentional torts for which punitive damages are available without proof of actual damages: libel and slander per se. *See Bauer v. Murphy,* 191 Wis.2d 517, 524–25, 530 N.W.2d 1, 3–4 (Ct.App.1995).

Notwithstanding these limited exceptions, the general rule remains that where no actual damages exist, an award of punitive damages is not appropriate. The Wisconsin Supreme Court reaffirmed this principle in *Groshek v. Trewin*:

> For example, we have held that "where there exists a 'cause of action,' but the action is not one for which the recovery of compensatory damages is justified, punitive damages cannot be awarded."

2010 WI 51, ¶ 26, 325 Wis.2d 250, 784 N.W.2d 163 (citing *Tucker v. Marcus,* 142 Wis.2d 425, 440–41, 418 N.W.2d 818, 823 (1988)). *Tucker* in turn cited the "general and perhaps almost universally accepted rule" that punitive damages cannot be awarded in the absence of actual damages. *Id.* at 438, 418 N.W.2d at 823. Courts are extremely reluctant to further extend these narrow exceptions. *See Mackenzie v. Miller Brewing Co.,* 234 Wis.2d 1, 66, 608 N.W.2d 331, 357 (Ct.App.2000) ("Nothing in *Tucker* or *Jacque* offers the slightest indication that false complaints of sexual harassment should form the basis for an exception to the 'firmly rooted' principle precluding punitive damages in the absence of compensatory damages.").

In light of this solidly entrenched common law doctrine, it is not surprising that the Debtors have not cited, nor has the Court's own research located, a single case where a claim under the medical privacy statute has proven successful without proof of actual damages. Absent such authority from the Wisconsin courts, and in light of the explicit legislative history of the statute, the Debtors' argument for an extension of the *Jacque* exception to the general rule should be rejected. In sum, proof of actual damages is a required element of a claim under Wis. Stat. § 146.84, and the Debtors need to show actual, as opposed to nominal, damages in order to succeed on such a claim. A failure to show actual damages is fatal to the Debtors' claims because there is no right to exemplary damages under § 146.84 unless actual damages are proven.

**b. The Debtors Did Not Prove Actual Damages**

■ Under Wisconsin law, the evidence must demonstrate an injury and sufficient data from which the court can estimate the amount of damages resulting from the injury before damages can be awarded. *See, e.g., Plywood Oshkosh, Inc. v. Van's Realty & Constr., Inc.,* 80 Wis.2d 26, 31, 257 N.W.2d 847 (1977). The claimant bears the burden of proving damages to a reasonable certainty. *Id.; see also Mgmt. Computer Servs. v. Hawkins, Ash, Baptie & Co.,* 206 Wis.2d 158, 188, 557 N.W.2d 67 (1996); *Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 387, 254 N.W.2d 463 (1977). Notably, "a claimant's mere statement or assumption that he has been damaged to a certain extent without stating any facts on which the estimate is made is too uncertain." *Plywood Oshkosh,* 80 Wis.2d at 31–32, 257 N.W.2d 847. To that end, in *Plywood Oshkosh,* the Wisconsin Supreme Court affirmed the trial court's judgment denying setoff when the testimony as to the amount of damages was speculative and uncorroborated. *Id.* at 32–33, 257 N.W.2d 847.

In the excerpts from the Ortiz Debtors' depositions filed with Aurora's Motion, each of the Debtors admitted that he or she could not point to any evidence of actual harm or actual damages that stemmed from Aurora's release of confidential information. Because of the timing of the Bembenek Debtors' Complaints, Aurora never took their depositions. However, in its Brief in support of that Motion, Aurora expressly challenged the Bembenek Debtors' allegations relating to actual damages. (Brief in Support of Summary Judgment, Bembenek Docket No. 24, filed under seal). Accordingly, Aurora successfully demonstrated the absence of proof of a required element of the Debtors' cause of action. *See Celotex*, 477 U.S. at 323–25, 106 S.Ct. 2548 (moving party need not submit materials negating plaintiff's claim; it is sufficient to point out to the court "that there is an absence of evidence to support the nonmoving party's case"). Once Aurora met its burden, the Debtors as "[t]he non-moving party ... must identify specific facts to establish that there is a genuine triable issue." *Bilow*, 277 F.3d at 893. "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment." *Lucas*, 367 F.3d at 726.

In response, the Debtors did not file an affidavit, declaration or other evidence of damages, nor did they seek an extension of time to conduct discovery under Rule 56(f); rather, they countered that Aurora had asserted and lost the same argument in its class certification response brief. However, Aurora did not file a class certification response brief in the Bembenek Adversary Proceeding. In the Ortiz Adversary Proceeding, Aurora argued that the failure to identify actual damages was a unique defense that destroyed the typicality requirement for a class action. The Court rejected the argument—not because actual damages are not a required element of the statutory claim in these cases—but because class action typicality should be determined by analyzing the defendant's actions, not by applying particularized defenses to individual class members. Accordingly, the Debtors' reliance on the same arguments they advanced in support of class certification was misguided.

At the hearing on Aurora's Motion, the Debtors' counsel asserted that the existence of actual damages was in dispute, but could not point to any specific evidence in the record to substantiate his claims. The Court requested that counsel file a post-hearing Supplement directing the Court to the evidence of actual damages in the record, and on May 19, 2010, counsel filed such a Supplement. But review of the Supplement shows that Debtors' evidence as to the actual damages claim consists of portions of the *exact same* deposition transcripts that Aurora submitted to show a lack of evidence in the record.[6] After a review of the entire record, it is apparent that the Debtors presented no

---

6. In their Motion to Reconsider, the Debtors took issue with the Court's observation that they had not filed an Affidavit or Declaration detailing their actual damages. At the Summary Judgment hearing, when the Court requested a Supplement to point to evidence of the dispute about damages in the record, Aurora's counsel argued that this Supplement should be limited to evidence already in the record, and the Court agreed. Aurora filed

the Motion for Summary Judgment on March 10, 2010; the Court held a hearing to establish a briefing schedule on March 23, 2010; and, with the agreement of the parties, held the hearing on May 18, 2010. Aurora challenged the Debtors' proof of damages at least twice, in its opening brief and in its reply brief, but the Debtors did not respond with any evidence of damages, nor seek an extension of time in order to obtain that evidence.

evidence of actual damages at all, and this glaring omission is fatal to their cause of action. The Ortiz Debtors' testimony with respect to damages confirmed that they are not aware of any damages, although there may be some damages that the Debtors do not know about, and that the Debtors may have some damages in the future. The Bembenek Debtors presented nothing in the way of evidence as to damages. Speculative, unknown or possible future damages were found to be improper in *Plywood Oshkosh*, and they smack of the type of claim the Governor had in mind when he exercised his veto and required a plaintiff to prove actual damages under § 146.84.

A damages claim supported only by nebulous statements simply does not meet the standard of proof required to defeat summary judgment. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Lucas*, 367 F.3d at 726. The Court recognizes that inferences must be drawn in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). But, even construing all of the facts in the light most favorable to the Debtors, there is no genuine issue of material fact in this record as to the existence of actual damages. *See Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991) (court is "not required to draw every conceivable inference from the record—only those inferences that are reasonable").

The United States Supreme Court requires summary judgment be granted when a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at

322–23, 106 S.Ct. 2548. This is such a case because the Debtors have failed to demonstrate actual damages, an essential element of their claim against Aurora.

## IV. CONCLUSION

Heeding the instruction of the Supreme Court and guidance of the Seventh Circuit, like Sidney Carton in *A Tale of Two Cities*, I respectfully submit these Proposed Findings and Conclusions to a "far, far better place" (at least for entry of a final order). I recommend that the District Court deny Aurora's Motion for Summary Judgment as to the claims on judicial estoppel and the absolute litigation privilege. However, since Aurora has established that there is no genuine issue of material fact as to the Debtors' lack of actual damages, I recommend that the District Court grant Aurora's Motion as a matter of law, on that basis. In the alternative, I respectfully move the District Court to withdraw the reference of these adversary proceedings, and enter an appropriate final Order.